J-A03032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| J.E.C., | | : | IN THE SUPERIOR COURT OF |
| | Appellee | : | PENNSYLVANIA |
| | | : | |
| | v. | : | |
| | | : | |
| C.C.C., | | : | |
| | Appellant | : | No. 1387 MDA 2014 |

Appeal from the Order entered July 23, 2014,
in the Court of Common Pleas of Lancaster County,
Civil Division, at No(s): CI-1215695

BEFORE:  MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MAY 12, 2015**

C.C.C. ("Father") appeals, *pro se*, from the order entered in the Lancaster County Court of Common Pleas, denying Father's petition for contempt against J.E.C. ("Mother"), and directing that the custody order entered on May 6, 2013, regarding their male children, I.G.C., born in November of 2004, and R.D.C., born in July of 2007, ("Children"), shall remain in full force and effect, subject to enumerated limited revisions.  We affirm.

The trial court set forth the factual background and procedural history of this case, which we adopt herein.  **See** Trial Ct. Op., 9/12/14, at 1-5. Importantly, on October 17, 2012, Mother filed a custody complaint against Father.  On December 3, 2012, the trial court memorialized an agreement of the parties into a custody order, under which the parties shared legal

_____
[*] Former Justice specially assigned to the Superior Court.

custody of Children, Mother retained primary physical custody, and Father exercised partial physical custody, in accordance with a schedule. The trial court entered the order on December 5, 2012. By agreement of the parties, on March 13, 2013, the trial court entered a custody order, dated March 11, 2013, directing that legal custody remained shared, primary physical custody remained with Mother, and partial physical custody remained with Father, in accordance with a schedule.

On May 3, 2013, the trial court held an evidentiary hearing. On May 7, 2013, the trial court entered an order, dated May 6, 2013, directing that legal custody would remain shared by the parties, Mother would maintain primary physical custody, and Father would exercise partial physical custody, in accordance with a schedule.

On September 20, 2013, Father filed a *pro se* petition for modification of the custody order. The parties were unable to reach an agreement at a custody modification conference held on November 12, 2013. On December 20, 2013, the trial court entered an order, based on the recommendation of the custody conference officer, directing that the May 6, 2013 order would remain in effect, pending a custody hearing scheduled to occur on February 27, 2014.

On December 13, 2013, Father filed a *pro se* petition for contempt against Mother. The trial court consolidated the hearing on the contempt petition with the modification hearing. On December 31, 2013, Father filed

a *pro se* petition for special relief requesting emergency custody of the Children, and indicating that Father would present the matter in a Family Business Court session on January 6, 2014. Father did not present the petition. At Father's request, on February 6, 2014, the trial court held a pre-trial conference. On February 26, 2014, the hearing was re-scheduled to June 4, 2014.

On February 27, 2014, Father filed another *pro se* petition for special relief requesting emergency custody of the Children, and indicating that he would present the matter in a session of Family Business Court on March 7, 2014. Father presented the petition, *pro se*, on March 7, 2014 in Family Business Court. On that same date, the trial court denied the petition, and entered its order on March 10, 2014.

On June 4, 2014 and June 5, 2014, the trial court held an evidentiary hearing on Father's modification and contempt petitions. The trial court entered its opinion and order on July 23, 2014, denying Father's petition for contempt, and directing that the custody order entered on May 6, 2013, shall remain in full force and effect, subject to the enumerated limited revisions. On August 1, 2014, Father filed a *pro se* motion for reconsideration.

On August 15, 2014, Father filed a *pro se* notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P.

1925(a)(2)(i) and (b). The trial court denied reconsideration on August 18, 2014.

On appeal, Father raises the following issues for our review:

1. DID THE TRIAL COURT FOLLOW THE PROMPT DISPOSITION OF CUSTODY CASES AS OUTLINED IN 23 PA.C.R. 1915.4 [SIC]?

2. DID THE TRIAL COURT INCORRECTLY NOTE FACTUAL EVIDENCE AND TESTIMONY THROUGHOUT IT'S [SIC] OPINION?

3. DID THE TRIAL COURT IMPROPERLY INDICATE THAT [FATHER] WAS DEFICIENT IN ENCOURAGING THE CHILDREN TO HAVE A RELATIONSHIP WITH THEIR MOTHER DURING HIS VISITATION?

4. WAS THE TRIAL COURT IN ERROR WHEN IT DETERMINED THAT THE LACK OF SUPERVISION BY [MOTHER] WAS AN ISOLATED INCIDENT?

5. DID THE TRIAL COURT COMMIT AN ERROR BY GIVING CONSIDERATION TO TESTIMONY GIVEN BY [MOTHER'S WITNESS, C.C.]?

6. WAS THE TRIAL COURT IN ERROR WHEN IT DETERMINED THAT [FATHER] INFLICTED AN EXCESSIVE AMOUNT OF CORPORAL PUNISHMENT?

7. DID THE TRIAL COURT COMMIT AN ERROR WHEN IT RECOGNIZED [MOTHER] TO BE THE PRIMARY CARETAKER OF THE CHILDREN SINCE BIRTH?

8. DID THE TRIAL COURT COMMIT AN ERROR BY VIEWING THE CURRENT CUSTODY ORDER AS AN ACCEPTABLE STANDARD OF LIVING DUE TO THE DURATION IN WHICH THE CURRENT ORDER HAS BEEN IN EFFECT?

9. DID THE TRIAL COURT COMMIT AN ERROR WHEN IT MISTOOK [MOTHER'S] MANIPULATIVE ACTIONS TO SEIZE SOLE CUSTODY OF THE CHILDREN TO BE A DIRECT RESULT OF [FATHER'S] CONDUCT?

10. DID THE TRIAL COURT RECOGNIZE TESTIMONY GIVEN REGARDING THE ENCOURAGEMENT OF RELATIONSHIPS WITH THE MATERNAL SIDE OF THE FAMILY BY [FATHER]?

11. DID THE TRIAL COURT COMMIT AN ERROR WHEN IT FAILED TO UPHOLD THE RIGHTS OF THE CHILDREN TO HAVE MORE ACCESS TO [FATHER] AS WAS REQUESTED BY [I.G.C.] DURING TESTIMONY?

12. DID THE TRIAL COURT COMMIT AN ERROR WHEN IT CONSIDERED THAT BOTH PARENTS ARE ABLE TO SIMPLY ATTEND THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATIONAL, AND SPECIAL NEEDS OF THE CHILDREN RATHER THAN CONSIDERING EACH PARTY'S ACTUAL PERFORMANCE OF SAID NEEDS?

13. DID THE TRIAL COURT COMMIT AN ERROR IN DETERMINING THAT TRANSFERRING CUSTODY TO THE CHILDREN'S FATHER [ ] WOULD BE MORE DISRUPTIVE THAT [SIC] TRANSFERRING CUSTODY TO A CHILD CARE GIVER?

14. WAS THE TRIAL COURT IN ERROR WHEN IT CLAIMED THAT IT IS A FACT THAT THERE WAS CORROBORATED MANIPULATIVE BEHAVIOR BETWEEN [FATHER] AND WITNESS [T.F.] TO REMOVE [MOTHER'S WITNESS, C.C.] FROM A RESIDENTIAL FACILITY?

15. DID THE TRAIL [SIC] COURT COMMIT AN ERROR WHEN IT MADE THE DETERMINATION THAT THERE WAS NO EVIDENCE TO SUPPORT THE CONTEMPT ALLEGATIONS MADE BY [FATHER] AND TO FURTHER COMMENT THAT IT IS VIEWED THAT SUCH CLAIMS WERE PUNITIVE IN NATURE AND WERE BEING USED TO MANIPULATE THE TRIAL COURT TO GAIN FAVOR?

16. DID THE TRIAL COURT COMMIT AN ERROR WHEN IT'S [SIC] DETERMINATION THAT THE CURRENT LEVELS OF THE CHILDREN'S STRESS WERE NOT EXCESSIVE ENOUGH TO WARRANT A CHANGE IN VISITATION[,] WHICH SUGGESTS THAT LIVING WITH THESE SYMPTOMS, WHICH WERE NOT A CONCERN PRIOR TO SEPARATION, ARE NOW AN ACCEPTABLE STANDARD OF LIVING?

17. WAS THE TRIAL COURT IN ERROR WHEN, ON MORE THAN ONE OCCASION, IT RUSHED [FATHER'S] TESTIMONY AND QUESTIONING OF WITNESSES, WARNING OF EXCESSIVE DELAYS IN SCHEDULING THE CONTINUANCE?

18. DID THE TRIAL COURT COMMIT AN ERROR NOT ONLY WHEN IT FAILED TO RECOGNIZE THE MULTIPLE INSTANCES WHERE [MOTHER] HAS TAKEN SOLE ACTION TO MAKE MAJOR MEDICAL AND EDUCATION DECISIONS FOR THE CHILDREN WITHOUT INFORMING OR OBTAINING INPUT FROM [FATHER], BUT ALSO BY CONFUSING THE SITUATIONS WHICH WERE PRESENTED BY [FATHER] TO SUPPORT SUCH ALLEGATIONS?

19. DID THE TRIAL COURT COMMIT AN ERROR WHEN IT DETERMINED THAT THE MISINFORMATION PROVIDED BY [MOTHER] ON MEDICAL INTAKE FORMS TO THREE (3) DIFFERENT MEDICAL PROVIDERS WAS GIVEN IN GOOD FAITH?

Father's Brief at 5-11.

As the custody trial in this matter was held in June of 2014, the Child Custody Act, ("the Act"), 23 Pa.C.S. §§ 5321 to 5340, is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

We apply the standard of review, as follows, in matters involving a trial court's decision on a contempt petition.

> When we review a trial court's finding of contempt, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. This [C]ourt also has

stated that each court is the exclusive judge of contempts against its process.

***G.A. v. D.L.***, 72 A.3d 264, 269 (Pa. Super. 2013), (citations and quotation marks omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 n.7 (Pa. Super. 2012), *appeal denied*, 94 A.3d 1010 (Pa. 2014), (citation omitted).

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

***G.A.***, 72 A.3d at 268-69 (quotation marks and citations omitted).

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard.

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**Id.** at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. **See** 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. 23 Pa.C.S. § 5328(a).

Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.
>
> (4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a)(1)-(7).

Section 5328(a) of the Act provides as follows.

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

In **A.V. v. S.T.**, 87 A.3d 818 (Pa. Super. 2014), this Court explained the following: "All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order. . . . The record

must be clear on appeal that the trial court considered all the factors. *Id.* at 822-23 (emphasis omitted).

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super.), *appeal denied*, 70 A.3d 808 (Pa. 2013). Section 5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013).

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [ ] 68 A.3d 909 ([Pa.] 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, 87 A.3d at 822-23.

In *Ketterer v. Seifert*, 902 A.2d 533 (Pa. Super. 2006), this Court stated,

> "Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest." The weight to be attributed to a child's testimony can best be determined by the judge before whom the child appears. The child's

> preference must be based upon good reasons and his or her maturity and intelligence must also be considered.

*Id.* at 540 (citations omitted). In ***Johns v. Cioci***, 865 A.2d 931 (Pa. Super. 2004), this Court opined: "We are mindful that the child's preference is not controlling . . . ." ***Id.*** at 943.

Here, the trial court addressed all of the section 5328(a) factors in its opinion entered on July 23, 2014. After a careful review of the entire record, including the notes of testimony and exhibits, the applicable law, as well as the arguments of the parties, we conclude that the thorough opinion by the Honorable Merrill M. Spahn, Jr., entered on September 15, 2014 pursuant to Pa.R.A.P. 1925(a), addresses the issues raised by Father and supports the reasons for the trial court's decision denying Father's petition for contempt, and denying his petition for modification of the existing custody order, subject to the enumerated limited revisions. We find ample, competent evidence in the record to support the trial court's decision regarding the contempt and custody modification petitions. ***G.A.***, 72 A.3d at 269; ***P.H.D.***, 56 A.3d at 706 n.7; ***C.R.F.***, 45 A.3d at 443. Thus, we find no error of law or abuse of discretion. Accordingly, we adopt the trial court's opinions entered on September 15, 2014 and July 23, 2014 as our own.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY,
PENNSYLVANIA

CIVIL ACTION – LAW

J███ E. C█████████,
      Plaintiff

    vs.                :      No. CI-12-15695

C█████ C. C█████████,
      Defendant

## Pa. R.A.P. 1925 OPINION

Defendant has filed a Children's Fast Track Appeal of the Court's July 23, 2014 Order regarding Defendant C███ C. C██████'s (hereinafter, "Father") Petition for Modification dated October 2, 2013 and Petition for Contempt dated December 13, 2013 in the instant custody action. The reasons for the Court's decision on Father's petitions are contained in the July 23, 2014 Opinion and Order. In response to the allegations contained in Defendant's Concise Statement for Errors Complained of on Appeal, the Court further details its rationale for the July 23, 2014 Opinion and Order herein.

## I.    PROCEDURAL HISTORY

Plaintiff, J██ E. C██████ (hereinafter, "Mother") filed a Custody Complaint on October 17, 2012. A custody conference was scheduled for November 28, 2012. At that conference, the parties reached an agreement, and, on

1



December 3, 2012, the Court memorialized their agreement into a custody order. The parties agreed to shared legal custody of the minor children, I█G. C█████ (D.O.B. 11/10/2004) and R███ D. C██████ (D.O.B. 7/23/2007). The parties further agreed that Mother would retain primary physical custody and Father would exercise partial physical custody of the children. By agreement of the parties, a follow-up custody conference was held on February 27, 2013. No agreement was reached at this conference. The Court, on March 11, 2013, issued an Order that legal custody remained shared; primary physical custody remained with the mother; and, partial physical custody with the father. An evidentiary hearing was held before the Court on May 3, 2013. On May 6, 2013, the Court ordered that legal custody would remain shared by the parties; Mother would maintain primary physical custody of the children; and, Father would exercise partial physical custody pursuant to a defined schedule.

On or about October 2, 2013, Father filed a Petition for Modification of the Custody Order. A modification conference was held on November 12, 2013. At this time, the parties were unable to reach an agreement. On December 20, 2013, upon the recommendation of the Custody Conference Officer, the Court ordered that the May 6, 2013 Order would remain in effect pending a custody hearing scheduled for February 27, 2014. The hearing was later rescheduled for June 4, 2014.

2

On or about December 13, 2013, Father filed a Petition for Contempt of the Custody Order. An evidentiary hearing on the contempt petition was consolidated with the previously scheduled modification hearing.

On December 31, 2013, Father filed a Petition for Special Relief requesting emergency custody of the children. Father's filing indicated that the matter would be presented by Father in a session of Family Business Court on January 6, 2014. Father failed to present the petition as indicated. Subsequently, on February 27, 2014, Father, again, filed the Petition for Special Relief requesting emergency custody of the children. Said filing indicated that Father would present the matter in a session of Family Business Court on March 7, 2014. On March 7, 2014, Father presented the petition in Family Business Court, which was denied by the Court by Order dated the same day.

On February 6, 2014, a Pretrial Conference was held in the instant matter at the request of Father. The evidentiary hearing on Father's Petitions for Modification and Contempt was held before the Court on June 4, 2014 and June 5, 2014. The Court entered a final order on July 23, 2014. Plaintiff filed a Petition for Reconsideration on August 1, 2014, which was denied by the Court by way of Order dated August 18, 2014. Plaintiff filed a timely Notice of Appeal on August 15, 2014.

3

## II.    SUMMARY OF THE FACTS

The parties share two children, I⬤G. C▮▮▮▮(DOB: November 10, 2004; Age: 9) and R▮▮ D. G▮▮▮▮ (DOB: March 23, 2007; Age: 7) (hereinafter,"Children'). (N.T. p. 12). Since the time of the parties' separation, Mother has maintained primary physical custody of the children and Father has exercised periods of partial physical custody.

Father has an additional child (C▮▮▮▮C▮▮▮▮ Age 17) from a previous relationship. (N.T. p. 112). When the children were very young, C▮▮▮▮ resided with the parties. (N.T. p. 113). C▮▮▮▮ relocated from the parties' home to reside with his biological mother when he was twelve years of age. (N.T. p. 113). C▮▮▮▮ currently resides in New Jersey and has had almost no contact with the children since that time, as C▮▮▮▮ and Father have been estranged. (N.T. p. 112, 242).

I⬤has been diagnosed with autism and is undergoing treatment at Philhaven's Center for Autism and Development Disabilities. (N.T. p. 184, 14, 52). Both parents have equal access to the children's medical providers and medical records. (N.T. p. 61).

Mother was granted a Protection From Abuse Order against Father which is still in effect, although the matter may remain on appeal with the Pennsylvania appellate courts. (N.T. p. 6). Mother and the children currently reside in the

4

marital home. (N.T. p. 224). The mortgage on the marital home is past due. (N.T. p. 224). Father resides with his paramour. (N.T. p. 13-15).

Inasmuch as many of Father's issues complained of on appeal involve the sufficiency of the facts to support the Court's decision, the underlying facts relevant to the Court's opinion will be more thoroughly developed in the Discussion herein.

## III. STANDARD OF REVIEW

### A. Trial Court Standard of Review

#### i. *Child Custody*

The paramount concern in child custody proceedings is the best interests of the child. Moore v. Moore, 634 A.2d 163, 169 (Pa. 1993). In making the custody determination, the Court's guiding principle is the best interests of the child, in accordance with factors set forth by 23 Pa. C.S.A.§5328. The test as to the best interests of the children when two parents are involved is evaluated on a scale that is initially weighed equally as to each parent. Sawko v. Sawko, 625 A.2d 692, 695 (Pa. Super. 1993). In a custody action, the particular circumstances of the case must be considered, and each case decided on its own individual facts. N.H.M. v. P.O.T., 947 A.2d 1268, 1273 (Pa. Super. 2008); E.A.L. v. L.J.W., 662 A.2d 1109, 1118 (Pa. Super. 1995).

5

*ii.    Contempt*

A party to a court order will be found in civil contempt where the complaining party shows, by a preponderance of the evidence, that the party violated a court order. Hyle v. Hyle, 868 A.2d 601, 604 (Pa. Super. 2005). Contempt of a custody order is punishable by any one or more of the following: imprisonment for a period of not more than six months, a fine of not more than $500, probation for a period of not more than six months, an order for nonrenewal, suspension, or denial of operating privilege under Section 4355 (relating to denial or suspension of licenses), counsel fees, and costs. 23 Pa. C.S.A. §5323(g). The Court may also modify a custody order in response to a violation thereof. Com. ex rel. E.H.T. v. R.E.T., 427 A.2d 1370, 1376 (Pa. Super. 1981).

To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. Stahl v. Redcay, 897 A.2d 478, 489 (Pa. Super. 2006).

6

*iii. Modification*

Upon petition, a court may modify a custody order to serve the best interest of the child. 23 Pa. C.S.A. §5338(a). 23 Pa. C.S. A. §5338(b) provides that Section 5338 applies to any custody order entered by a court of the Commonwealth of Pennsylvania or any other state subject to the jurisdictional requirements set forth in the Uniform Child Custody Jurisdiction and Enforcement Act. In determining child custody issues, a trial court may inquire into the best interest of the child regardless of whether substantial change in circumstances has been shown. Karis v. Karis, 544 A.2d. 1328 (Pa. 1988).

## B. Appellate Standard of Review

It is well established that the scope of appellate review in child custody disputes is of the broadest type – abuse of discretion. In re Arnold, 428 A.2d 627, 628 (Pa. Super. 1981); Com. ex rel. Spriggs v. Carson, 368 A.2d 635 (Pa. 1977). An abuse of discretion in the context of child custody does not consist merely of an error in judgment. K.B.H. v. C.B.F., 833 A.2d 767 (Pa. Super. 2003); T.B. v. L.R.M., 753 A.2d 873 (Pa. Super. 2000), order aff'd, 786 A.2d 913 (Pa. 2001). Abuse of discretion exists only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record.

7

N.H.M. v. P.O.T., 947 A.2d 1268, 1272 (Pa. Super. 2008); K.B.II v. C.B.F., 833 A.2d 767 (Pa. Super. 2003).

An appellate court is bound by the trial court's factual findings if they are supported in the record; the appellate court exercises its own independent deductions and inferences from facts as found by the trial court judge. Anderson v. McVay, 743 A.2d 472 (Pa. Super. 1999); K.W.B. v. E.A.B., 698 A.2d 609 (Pa. Super. 1997). Because the Superior Court's role does not include making independent factual determinations, when reviewing a custody order, the Superior Court must accept findings of the trial court that are supported by competent evidence of record. J.M.R. v. J.M., 1 A.3d 902, 911 (Pa. Super. 2010) quoting Collins v. Collins, 897 A.2d 466, 471 (Pa. Super. 2006); In re K.T.E.L., 983 A.2d 745, 749 (Pa. Super. 2009). With regard to issues of credibility and weight of the evidence, the Superior Court must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. J.M.R., 1 A.3d at 911 quoting Collins, 897 A.2d at 471.

## II.    DISCUSSION

**Concise Statement for Errors Complained of on Appeal –Averment 1**

In his Concise Statement for Errors Complained of on Appeal, Father initially alleges that "the Trial Court failed to follow the prompt disposition of custody cases as outlined in 23 Pa. C.R. 1915.4."

The procedural history of the instant matter reveals that on or about October 2, 2013, Father filed a Petition for Modification of the Custody Order. A modification conference was held on November 12, 2013, but, the parties were unable to reach an agreement. On December 20, 2013, upon the recommendation of the Custody Conference Officer, the Court ordered that the May 6, 2013 Order would remain in effect pending a custody hearing scheduled for February 27, 2014 at 10:00 a.m. In light of the fact that an unrelated custody matter scheduled at 9:00 a.m. on February 27, 2014 proceeded as scheduled, the hearing in the instant matter was rescheduled for June 4, 2014. On or about December 13, 2013, Father filed a Petition for Contempt of the Custody Order. An evidentiary hearing on the contempt petition was consolidated with the previously scheduled modification hearing. An evidentiary hearing was conducted on June 4, 2014 and June 5, 2014 regarding both the Petition for Modification of the Custody Order and the Petition for Contempt of the Custody Order.

9

At the evidentiary hearing on June 4, 2014, the Court noted that it would normally hear closing arguments; however, due to time constraints, would give the parties additional time to present written arguments to the Court with proposed orders. (N.T. p. 249, 250). The parties agreed to June 18, 2014 as the deadline within which to submit written arguments and proposed orders. (N.T. p. 250-251). Additionally, on the record, the Court indicated that, pursuant to statute, a review of the involvement of the family with the Lancaster County Children and Youth Social Service Agency would be required. (N.T. p. 250).

Rule 1915.4 of the Pennsylvania Rules of Civil Procedure, which provides for the prompt disposition of custody cases, provides, in pertinent part, as follows:

> **(d) Prompt Decisions.** The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

Pa. R.C.P. 1915.4(d).

In this case, the evidentiary hearing concluded on June 5, 2014 and the agreed extended deadline for the parties to submit written arguments with proposed orders was June 18, 2014. The Court's Opinion and Order for Custody was entered on July 23, 2014, just thirty-four days after the agreed deadline for written arguments with proposed order and forty-eight days after the conclusion of testimony. Accordingly, the Court's Opinion and Order for Custody was entered

10

and filed within forty-five days as required by Rule 1915.4(d) of the Pennsylvania Rules of Civil Procedure. The Court clearly indicated, on the record, that good cause existed for a minor extension of time insofar as written arguments with proposed orders were to be submitted two weeks after the completion of testimony and the Court was statutorily required to review the records of the Lancaster County Children and Youth Social Service Agency. Neither party objected on the record and Father did not lodge any objection once the forty-five day period had purportedly elapsed. As such, Father waived any objection to the Court's purported delay in entering and filing its decision.

Assuming, arguendo, that the Court's Opinion and Order for Custody is deemed to have not been entered and filed within forty-five days as required by Rule 1915.4(d) of the Pennsylvania Rules of Civil Procedure, Father is unable to demonstrate any prejudice resulting from the Court's purported minor delay in entering and filing its decision. The present custody order has been in effect for over one year and both of Father's emergency petitions during that time frame were denied as having been deemed by the Court to lack merit. There are simply no substantial rights of the parties which have been affected in any way. Judicial economy would not warrant a new trial at considerable expense to both parties.

11

## Concise Statement for Errors Complained of on Appeal – Averment 2

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "factual evidence and testimony were improperly noted throughout the Trial Court's Opinion."

Father has failed to specifically identify what factual evidence and testimony he contends was allegedly improperly noted. A review of the record in its entirety demonstrates that the conclusions drawn by the trial court are supported by the facts produced at the evidentiary hearing and all reasonable inferences therefrom.

## Concise Statement for Errors Complaint of on Appeal – Averment 3

<u>Factor 1 - Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.</u>

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[t]he Trial Court indicates that both parents are disturbingly deficient in encouraging and permitting frequent and continuing contact with the other parent; however, there was no testimony or evidence provided which indicated that Defendant/Appellant does not encourage the children to have a relationship with their mother."

The Court noted in the July 23, 2014 Opinion and Order that neither party has performed appropriately in this regard. The Court's conclusion that both parties are disturbingly deficient in encouraging and permitting frequent and continuing contact between the children the other parent is directly supported by

12

the testimony presented before this Court and the reasonable inferences from said facts. The parties' inability to communicate with one another on matters involving the children is deficient for numerous reasons such as the existence of a current Protection From Abuse Order that Mother has against Father and lengthy and contentious divorce proceedings between Mother and Father. The Court believes that both parents incorrectly view their time spent with the children as being their own, free from the interference of the other parent. This is simply inappropriate. The Court specifically determined that both parties need to overcome their disdain for each other and encourage contact between the children and the other parent. Simply put, based upon the record presented, this Court specifically rejected the position advanced by Father is the instant allegation of error.

### Concise Statement for Errors Complaint of on Appeal – Averment 4

Factor 2 - The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[w]hile the Trial Court determined that the lack of supervision of the children while in the Plaintiff's/Appellee's care was an isolated incident, testimony from two witnesses showed this continued failure to adequately supervise the children is a pattern of behavior by the Plaintiff/Appellee. The isolated incident was for the concern of the destruction of the property."

13

The Court noted in the July 23, 2014 Opinion and Order that the Court does not believe that there exists any current risk of harm to the children by either parent or any members of their households. Absent an isolated incident where the children were playing in the street near Mother's residence unsupervised while in her custody, there is no evidence to suggest a pattern of behavior by Mother of failing to adequately supervise the children that would result in any risk of harm to the children while in her custody. Said conclusion was directly corroborated by the witnesses presented by **Father** *(emphasis added)*, who testified that the children playing outside unsupervised has not been a lingering concern. Again, this allegation of error was specifically considered and rejected by this Court.

**Concise Statement for Errors Complaint of on Appeal – Averment 5**

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[t]he Trial Court determined that it felt that the uncorroborated testimony regarding abuse given by the Plaintiff's/Appellee's witness, C█████ C█████, was exaggerated; however, upon cross examination, testimony and evidence presented shows the character of this witness to be untruthful and unreliable in respect to relevant matters (225 Pa. C.R. 607 and 608)."

In the July 23, 2014 Opinion and Order, the Court indicated that it recognized the underlying bias of C█████ C█████ the elder son of Father, who had a strained relationship with Father and attempted to portray his father as

14

being quite abusive and unstable. The Court indicated that it does believe that

C██████ exaggerated the extent of such treatment in an effort to portray his

father in a negative light and, therefore, found that Father did not poses a risk of

harm to the minor children involved in this matter.

Further, as finder of fact, it is axiomatic that the trial court is free to give a

witness' testimony whatever weight it deems appropriate. C.R.F. v. S.E.F., 45

A.3d 441, 445 (Pa. Super. 2012). A trial court is free to believe all, part, or none of

each witness' testimony. *Id.* In this matter, this Court carefully considered the

testimony presented by C██████ C██████ and assigned the appropriate weight

to be given to his testimony.

### Concise Statement for Errors Complaint of on Appeal – Averment 6

In his Concise Statement for Errors Complaint of on Appeal, Father alleges

that "[n]o evidence or credible testimony to support that any excessive amount of

corporal punishment had taken place at the hands of the Defendant/Appellant was

provided at any point in time."

Again, this Court, after thoughtful deliberation, simply disagrees with

Father's assertion in this regard. As noted in the July 23, 2014 Opinion and Order,

in discussing whether Father poses a risk of harm to the minor children, Father's

son, C██████ C██████, presented testimony that Father did expose

15

C████████to an excessive amount of corporal punishment during his formative years. That being said, the Court noted that it does believe that C██████ exaggerated the extent of such treatment in an effort to portray his father in a negative light. Accordingly, the Court specifically found that Father did not pose a current risk of harm to the minor children involved in this action.

## Concise Statement for Errors Complaint of on Appeal – Averment 7

Factor 3 - The parental duties performed by each party on behalf of the child.

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "Plaintiff/Appellee is mistakenly recognized as having always been the primary caretaker of the children when the Plaintiff/Appellee's testimony revealed that this was not the case."

As noted in the July 23, 2014 Opinion and Order, the testimony presented clearly established that both parties adequately perform parental duties on behalf of the minor children. The Court properly recognized that, prior to the parties' separation and during present periods of partial physical custody, Father has performed appropriate parental duties with respect to the minor children. Contrary to Father's current assertion, after thoughtful consideration, the Court firmly believes that Mother has always taken an active role in care of the minor children

16

and has been the primary caretaker, both before and after the separation of the parties.

### Concise Statement for Errors Complaint of on Appeal – Averment 8

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[t]he Trial Court determined that the current Custody Order is acceptable due to the duration in which it has been in effect when, it is actually due to the lengthy legal proceedings that all of the parties involved in this litigation have been forced to accept this standard of living."

Father's contention is this regard lacks factual merit. A review of the pleadings reveals that Mother has maintained primary physical custody of the children since the parties' separation, which was initially based upon the express agreement of the parties, and that status quo was supported by the Court's May 6, 2014 Order and the Court's July 23, 2014 Opinion and Order. The legal proceedings have actually progressed relatively quickly since Mother's initial custody filing on October 17, 2012, which was resolved at an evidentiary hearing on May 3, 2013 and May 6, 2013 Order and Father's modification and contempt filings on October 2, 2013 and December 13, 2014, which were resolved at an evidentiary hearing on June 4, 2014 and June 5, 2014 and July 23, 2014 Opinion and Order.

17

### Concise Statement for Errors Complaint of on Appeal – Averment 9

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[t]he Trial Court fails to recognize that, upon separation, the Plaintiff/ Appellee took unwarranted legal action to seize custody of the children. This action, which was supported by the Trial Court, directly affected the quality and quantity of the children's relationship with the Defendant/Appellant by effectively removing his parental rights. Prior to the separation, the children spent the majority of their time with the Defendant/Appellant."

Again, Father's averment in this regard lacks factual support. In the July 23, 2014 Opinion and Order, the Court noted the Protection From Abuse Order that Mother was awarded against Father was granted following a full evidentiary hearing and a prior judicial finding that Father had engaged in abusive conduct directed toward Mother. As such, any limitation on the time spent between Father and his children which resulted from the Protection from Abuse matter is the direct result of Father's conduct, which he appears to attempt to re-litigate herein. That being said, this Court has repeatedly recognized Father's performance of appropriate parental duties with respect the instant minor children both before and after the entry of said protective order, although the Court, as previously noted, specifically disagrees with Father's current contention that he was the primary caregiver prior to the separation of the parties.

18

**Concise Statement for Errors Complaint of on Appeal – Averment 10**

<u>Factor 5 - The availability of extended family.</u>

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[t]he Trial Court recognizes the Plaintiff's/Appellee's local extended family; however, it did not recognize that testimony was presented to show that Defendant/Appellant actively encourages contact between the children with said family members."

Again, Father's current contention lacks factual merit. In the July 23, 2014 Opinion and Order, the Court recognizes that Mother has several extended family members residing in Lancaster County, with whom the children share a positive relationship. There was simply no testimony presented with respect to any extended family in Father's family residing in close proximity or that Father actively encourages contact with Mother's family members.

**Concise Statement for Errors Complaint of on Appeal – Averment 11**

<u>Factor 7 - The well-reasoned preference of the child, based on the child's maturity and judgment.</u>

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "I̶ C̶̶̶̶̶̶ requested that the Trial Court grant him the ability to spend more time with the Defendant/Appellant. Despite the fact that this is the second hearing in which the child has made this same request, the court continues to deny the child's right to this reasonable request."

19

In the July 23, 2014 Opinion and Order, the Court indicated that it did have the opportunity to speak with I●C██████ in chambers. While the child did express a preference to spend more time with his father, the Court gave such preference deferential weight and concluded that the child's preference was based upon sentimentality and not the product of sound reason.

**Concise Statement for Errors Complaint of on Appeal – Averment 12**

<u>Factor 10 - Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the Child.</u>

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[t]hough the court believes that both parents are equally able to attend to the daily physical, emotional, developmental, educational, and special needs of the children, the Defendant/Appellant has a proven history of engaging the children on multiple levels, while testimony showed that Plaintiff/Appellant fails to actively and consistently engage the children in activities that encourage physical and developmental growth."

Based upon thoughtful consideration, this Court disagrees with Father's factual assertion in this regard. In the July 23, 2014 Opinion and Order, the Court determined that both parents are equally able to attend to the daily physical, emotional, developmental, educational, and special needs of the children. Both parents are actively involved in the medical and educational difficulties of the child, I●. This fact underscores the ability of both parents to continue to attend to

20

these needs of the children. The factual record clearly demonstrates the efforts to which Mother has attended to such needs of the minor children, thereby directly refuting this claim of the father.

## Concise Statement for Errors Complaint of on Appeal – Averment 13

<u>Factor 12 -   Each party's availability to care for the child or ability to make appropriate child-care arrangements.</u>

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[w]hile Plaintiff/Appellee has maintained adequate child care for the children, the Trial Court fails to realize that, because of Defendant/Appellant's open schedule, more visitation could be granted which would make such arrangements unnecessary."

In the July 23, 2014 Opinion and Order, the Court not only noted that Father presented no testimony regarding his ability to arrange for child care but did recognize that Father was unemployed and seemingly would not need child care while the children are in his custody. That being said, the Court does also note that Mother is capable of providing equally acceptable child care arrangements. Father seemingly suggests that he should be provided the opportunity to care for the children whenever Mother is personally unable to do so based upon her employment duties. The Court specifically considered and rejected this argument. In fashioning an order in this matter, the consistency and stability of these minor children was of paramount concern, particularly in light of the specialized needs of

21

these children. To accept Father's position, would require an excessive number of custody exchanges, which this Court firmly believes would only serve to disrupt the children's current schedule and substantially impair their stability. This Court was unwilling to do so and directly rejected Father's claim in this nature.

**Concise Statement for Errors Complaint of on Appeal – Averment 14**

In his Concise Statement for Errors Complaint of on Appeal, Father alleges that "[t]he Trial Court refers to behaviors taken by Defendant/Appellant to assist C█████ C█████ to exit a residential facility as manipulative and even goes as far as to claim that this is a fact. There was no credible testimony presented to show that the Defendant/Appellant conducted any behaviors outside the realm of the law."

Father's claim in this regard misrepresents the manner in which this Court considered the testimony regarding this incident involving C█████ C█████. In the July 23, 2014 Opinion and Order, the Court's factual determination was based upon the testimony of the father and his girlfriend that Father's girlfriend assisted with Father's manipulative efforts in attempting to remove C█████ C█████ from a residential treatment facility. The Court's conclusion was made in consideration of whether Father's girlfriend would be an appropriate resource for child care if needed and, categorically did not pertain to whether Father engaged in any sort of illegal conduct.

22

**Concise Statement for Errors Complained of on Appeal – Averment 15**

In his Concise Statement for Errors Complained of on Appeal, Father alleges that the trial court "determined that there was nothing presented to indicate that the Plaintiff/Appellee was in contempt of the Custody Order, the Trial Court fails to acknowledge the multiple instances which occurred over a lengthy period of time, where the Plaintiff/Appellee disregard of the Custody Order which she had acknowledged receiving, reading, and understanding."

In the July 23, 2014 Opinion and Order, the Court indicated that the testimony and evidentiary documentation presented to the Court, more specifically, Father's own testimony, refuted Father's allegation of Mother's contempt insofar as Father was directly involved in his son, I●'s, treatment. Father expressly stated that the Center for Autism and Development Disabilities informed him that his input was not necessary for the child's intake appointment. There was nothing that Mother did, or did not do, to prevent him from attending this appointment. Father's claim that Mother failed to involve him in I●'s medical treatment is also directly refuted by the medical record documents presented to the Court, which evidence multiple signatures of Father as having taken the child for his medical appointments.

Father also alleges that Mother provided false and inconsistent information to various health care providers; however, the evidence presented at the hearing

23

showed any information Mother provided to others, even if ultimately inaccurate, was given in good faith.

With respect to the educational issues, Father claimed that Mother did not involve him in an Individual Education Plan meeting with officials from the school district. Mother testified that Father was precluded from attending this meeting due to the existence of the Protection From Abuse Order relative to the parties. As such, it is the result of Father's actions which prevented him from attending this meeting. Further, Father was subsequently provided with the relevant educational information.

There was no evidence presented that Mother failed to notify Father of a serious illness of I█. Father appears to claim that he was not informed about I█ autism diagnosis, but evidence presented contradicts this claim. In actuality, it is clear that Father was well aware of this diagnosis, has been involved in his son's treatment process, and was involved in securing a second medical opinion regarding this diagnosis and treatment plan.

There was no evidence presented that support's Father's allegation that Mother fails to cooperate with encouraging contact and reasonable telephone access between Father and the children. Mother does not maintain a traditional telephone at her residence; however, the children use a prepaid cellular telephone so they can communicate with their father. Mother admitted that there have been

24

occasions where the telephone minutes had expired; however, efforts were promptly made to restore said communication.

There was no evidence presented that Mother makes any negative comments about Father directly to the children or in the children's presence or that she permits negative comments to be made about Father directly to the children or in the children's presence.

The Court's chief concern with the contempt allegations was Father's attempts to use the custody order as a punitive weapon against Mother to try to sway the custody litigation in his favor.

**Concise Statement for Errors Complained of on Appeal – Averment 16**

In his Concise Statement for Errors Complained of on Appeal, Father alleges that "[t]he Trial Court's position on symptoms of childhood stress described and documented on exhibits suggest that such symptom are an acceptable standard of living."

At no time did the Court render a conclusion that stress placed upon children as a result of domestic turmoil constituted an acceptable standard of living. This Court noted that no professional evidence was presented to suggest that the minor children are exhibiting behaviors any different than other children involved in contentious custody litigation. While this Court thoroughly considered Father's contention that these minor children were demonstrating some sort of

25

extraordinary stress or psychological damage, it expressly rejected such a conclusion based upon the lack of expert testimony and based upon a totality of the evidence presented, including the Court's personal discussion with I██ C███████

**Concise Statement for Errors Complained of on Appeal – Averment 17**

In his Concise Statement for Errors Complained of on Appeal, Father alleges that "[w]hile the Trial Court claimed it was not rushing the Defendant/Appellant, on two separate occasions, during his testimony, the Defendant/Appellant was reminded of the hearings time constraints and informed on the possibility of a further lengthy delay in the event that the hearing be continued. Due to this, several pieces of evidence, regarding contempt, safety and medication concerns were offered through testimony only, including the majority of the verifiable text message log."

On one occasion during the evidentiary hearing, the Court cautioned Father, during his testimony, that he needed to consider what matters were truly important for consideration and presentation of his case. Specifically, the Court stated that "[m]y concern is, at this rate, we may not complete today and, given my schedule, if this matter has to be rescheduled, you could be looking at a lengthy delay. So I'm not seeking to limit your testimony. If there are matters you feel need to be covered, please feel free to do that; however, if you can cover those matters without getting into extraneous details that aren't relevant, I'd appreciate that."

26

(N.T. 65, 66). To which, Father replied, "[y]es, Your Honor." (N.T. 66). Clearly, the Court, in no way, sought to prevent Father from submitting relevant evidence or limit Father's testimony.

Father sought to introduce into evidence text message logs of conversations between himself and the intermediary between the parties. (N.T. 35-37). After objection by opposing counsel, the Court assisted the self-represented Father by noting that the issues could be covered by Father's own testimony and cross-examination of the intermediary. (N.T. 37-38). The Court was very clear to note to Father that "it doesn't prohibit you from presenting whatever testimony you wish regarding, again, whatever issues you deem relevant." (N.T. 39). Again, Father improperly sought to introduce into evidence bulk text message logs but, after a discussion about the impropriety of his attempt, Father made the express independent decision to seek to introduce only text messages from October 8 and 9 when cross-examining Mother, which were admitted without objection as Defendant's Exhibit 10. (N.T. 38,208- 212). A review of the record reveals that Father was actually able to admit text messages despite his claim to the contrary.

27

**Concise Statement for Errors Complained of on Appeal – Averments 18 and 19**

In averment 18 of his Concise Statement for Errors Complained of on Appeal, Father alleges that "[t]he Trial Court fails to recognize the multiple instances where the Plaintiff/Appellee has taken sole action to make major medical and educational decisions for the children without informing or obtaining input from the Defendant/Appellee." In averment 19 of his Concise Statement for Errors Complained of on Appeal, Father alleges that "[t]he Trial Court indicated that the Protection From Abuse Order precludes Defendant/Appellee's involvement in the Individualized Educational Plan meeting for Ian Castaneda per the testimony of the Plaintiff/ Appellee."

Father appears to claim that he was not informed about I●'s autism diagnosis, but evidence presented contradicts this claim. In actuality, it is clear that Father was well aware of this diagnosis, has been involved in his son's treatment process, and was involved in securing a second medical opinion regarding this diagnosis and treatment plan.

While it is clear to the Court that the communication between the parties is strained, the Court does not find that Mother purposely excluded Father from any medical or educational decisions. With respect to the medical issues, although Father professes a need for additional information or input, it is clear that Father

28

was directly involved in his son's treatment. Father expressly stated that the Center for Autism and Development Disabilities informed him that his input was not necessary for the child's intake appointment. As such, Mother's actions did not prevent him from attending this appointment. Father's claim that Mother failed to involve him in I●'s medical treatment is directly refuted by the medical record documents presented to the Court, which evidence multiple signatures of Father as having taken the child for his medical appointments. Father also alleges that Mother provided false and inconsistent information to various health care providers; however, the evidence presented at the hearing showed any information Mother provided to others, even if ultimately inaccurate, was given in good faith.

With respect to the educational issues, Father claimed that Mother did not involve him in an Individual Education Plan meeting with officials from the school district. Mother testified that Father was precluded from attending this meeting due to the existence of the Protection From Abuse Order relative to the parties. As such, it is the result of Father's actions which prevented him from attending this meeting. Further, Father was subsequently provided with the relevant educational information.

**Concise Statement for Errors Complained of on Appeal – Averment 20**

In his Concise Statement for Errors Complained of on Appeal, Father alleges that "[w]hile the Trial Court determined that the misinformation provided to

various health care providers by the Plaintiff/Appellee was given in good faith, the Trial Court fails to recognize that the false and inaccurate information provided in these forms can ultimately be counterproductive to the proper diagnosis and treatment of the children."

The Court notes that no professional evidence was presented to indicate that there was an improper diagnosis and/or improper treatment of the children. In the determination of this Court, any information Mother provided to others, even if ultimately inaccurate, was given in good faith.

## V.   CONCLUSION

In this matter, Father was requesting that that Court modify the current physical custody arrangement and also that Mother be held in contempt of court. This Court does not believe that it is in the best interests of the children to grant either request. The Court concluded that, although the communication between the parties is strained, Mother did not purposely excluded Father from any medical or educational decisions. For the reasons articulated above, this Court believes that the current custody schedule presents the most stable and consistent environment for the continued welfare of the children. It should be noted that, although this Court was quite disturbed by the testimony concerning Father's treatment of the children, particularly his oldest son, the Court did not reduce

Father's periods of partial custody from what he had been exercising under the prior order.

Because the Court utilized a complete record, analyzed the record based on the all factors enumerated in 23 Pa. C.S. Section 5328, and has given an extensive explanation of such above, it should be entitled to the broadest of all scopes of review, which is abuse of discretion. K.L.H. v. G.D.H., 464 A.2d 1368, 1371 (Pa. Super. Ct. 1983). The Court does not believe that it has overridden or misapplied the law, and does not believe that its conclusion was manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record. N.H.M. v. P.O.T., 947 A.2d 1268, 1272 (Pa. Super. Ct. 2008). The Court carefully considered the best interests of the children, and as a result, entered an order dismissing Father's Petition for Contempt and keeping the Custody Order dated May 6, 2013 in full force and effect with limited revisions pertaining to the storage of combustible explosives and corporal punishment.

BY THE COURT:

_____
MERRILL M. SPAHN, JR., JUDGE

ATTEST: _____
Deputy

cc: Douglas P. Lehman, Esquire, counsel for Plaintiff
    C. C████████, pro se, ████████████████

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE 9-15-14 Mailed

ENTERED AND FILED
PROTHONOTARY'S OFFICE
LANCASTER, PA
***Electronically Filed*****
Jul 23 2014 4:27 PM

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

CIVIL ACTION-LAW

J██ E. C████,
　　　Plaintiff

　　vs.

C███ C. C████,
　　　Defendant

No. CI-12-15695

## OPINION

This matter is before the Court on Defendant Carlos C. Castaneda's ("Father") Petition for Modification dated October 2, 2013, and Petition for Contempt dated December 13, 2013. Following a hearing which was attended by Plaintiff, with counsel, and Defendant, without counsel, this matter is ripe for review.

## I. PROCEDURAL HISTORY

Plaintiff, J██ E. C████ ("Mother") filed a Custody Complaint on October 17, 2012. A custody conference was scheduled for November 28, 2012. At that conference, the parties reached an agreement, and, on December 3, 2012, the Court memorialized their agreement into a custody order. The parties agreed to shared legal custody of the minor children, I██ G. C████ (D.O.B. 11/10/2004) and R██ D. C████ (D.O.B. 7/23/2007). The parties further agreed that Mother would retain primary physical custody and Father would exercise partial physical custody of the children. By agreement of the parties, a follow-up custody conference was held on February 27, 2013. No agreement was reached at this conference. The Court, on March 11, 2013, issued an Order that legal custody remained shared; primary physical custody remained with the mother; and, partial physical custody with the father. An evidentiary hearing was held before the Court on May 3, 2013. On May 6, 2013, the Court ordered that legal custody would

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
Jul 23 2014 4:27 PM



remain shared by the parties; Mother would maintain primary physical custody of the children; and, Father would exercise partial physical custody pursuant to a defined schedule.

On or about October 2, 2013, Father filed a Petition for Modification of the Custody Order. A modification conference was held on November 12, 2013. At this time, the parties were unable to reach an agreement. On December 20, 2013, upon the recommendation of the Custody Conference Officer, the Court ordered that the May 6, 2013 Order would remain in effect pending a custody hearing scheduled for February 27, 2014. The hearing was later rescheduled for June 4, 2014.

On or about December 13, 2013, Father filed a Petition for Contempt of the Custody Order. An evidentiary hearing on the contempt petition was consolidated with the previously scheduled modification hearing.

On December 31, 2013, Father filed a Petition for Special Relief requesting emergency custody of the children. Father's filing indicated that the matter would be presented by Father in a session of Family Business Court on January 6, 2014. Father failed to present the petition as indicated. Subsequently, on February 27, 2014, Father, again, filed the Petition for Special Relief requesting emergency custody of the children. Said filing indicated that Father would present the matter in a session of Family Business Court on March 7, 2014. On March 7, 2014, Father presented the petition in Family Business Court, which was denied by the Court by Order dated the same day.

On February 6, 2014, a Pretrial Conference was held in the instant matter at the request of Father. On June 4, 2014, an evidentiary hearing was held on Father's Petitions for Modification and Contempt.

2

## II.    BRIEF FACTUAL OVERVIEW

The parties were married on May 15, 2004. A Complaint for Divorce is currently pending before this Court. The Court notes that the parties have been involved in contentious litigation regarding custody, support, divorces issues, and claims of domestic abuse. The parties share two children, I●G. C▬▬ (DOB: November 10, 2004; Age: 9) and R● D. C▬▬ (DOB: March 23, 2007; Age: 7) ("Children'). Since the time of the parties' separation, Mother has maintained primary physical custody of the children and Father has exercised periods of partial physical custody.

Father has an additional child (C▬ C▬; Age 17) from a previous relationship. When the children were very young, C▬ resided with the parties for a brief period of time. C▬ relocated from the parties' home to reside with his biological mother when he was twelve years of age. C▬ currently resides in New Jersey and has had almost no contact with the children since that time, as C▬ and Father have been estranged.

I● has been diagnosed with autism and is undergoing treatment at the Center for Autism and Development Disabilities. Both parents have equal access to the children's medical providers and medical records.

Mother was granted a Protection From Abuse Order against Father on October 31, 2012. This Order is still in effect, although the matter remains on appeal with the Pennsylvania appellate courts. Mother and the children currently reside in the marital home. The marital home is in foreclosure proceedings. Father resides with his paramour.

The facts relevant to the Court's inquiry, as well as an analysis of the factors enumerated by 23 Pa.C.S.A.§5328, will be set forth in greater detail in the Discussion herein.

## III.   STANDARD OF REVIEW

To be found in civil contempt, a party must have violated a court order; accordingly, the complaining party must show, by a preponderance of the evidence, that a party violated a court order. Childress v. Bogosian, 12 A.3d 448 (Pa. Super. 2011). For a person to be found in civil contempt, the moving party must prove that: (1) the contemnor had notice of the specific order or decree that he disobeyed; (2) the act constituting the violation was volitional; and, (3) the contemnor acted with wrongful intent. Gunther v. Bolus, 853 A.2d 1014 (Pa. Super. 2004). To be punished for civil contempt, a party must not only have violated a court order, but that order must have been definite, clear, and specific, leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. In re Contempt of Cullen, 849 A.2d 1207 (Pa. Super. 2004).

In considering a petition for modification of a custody order between parents, each party bears the burden of proof by a preponderance of the evidence to show they should be granted custody, and thus the evidentiary scale is evenly balanced at the outset of the proceedings. 23 Pa.C.S. § 5327(a); Sawko v. Sawko, 625 A.2d 692 (Pa.Super. 1993); In re Temos, 450 A.2d 111 (Pa. Super. 1982). In making the custody determination, the Court's guiding principle is the best interests of the children, in accordance with the factors set forth in 23 Pa.C.S. § 5328.

## IV.   DISCUSSION

In his December 13, 2013, Petition for Contempt, Father raises several claims of purported contemptuous behavior by Mother.

Initially, Father alleges that Mother committed parental alienation with respect to medical and educational issues regarding I⬛ the parties' older child. Said allegation is directly refuted by the testimony and evidentiary documentation presented to the Court; including Father's own

4

testimony. While it is clear to the Court that the communication between the parties is strained, the Court does not find that Mother purposely excluded Father from any medical or educational decisions. With respect to the medical issues, although Father professes a need for additional information or input, it is clear that Father was directly involved in his son's treatment. Father expressly stated that the Center for Autism and Development Disabilities informed him that his input was not necessary for the child's intake appointment. As such, Mother's actions did not prevent him from attending this appointment. Father's claim that Mother failed to involve him in I▲'s medical treatment is directly refuted by the medical record documents presented to the Court, which evidence multiple signatures of Father as having taken the child for his medical appointments. Father also alleges that Mother provided false and inconsistent information to various health care providers; however, the evidence presented at the hearing showed any information Mother provided to others, even if ultimately inaccurate, was given in good faith. With respect to the educational issues, Father claimed that Mother did not involve him in an Individual Education Plan meeting with officials from the school district. Mother testified that Father was precluded from attending this meeting due to the existence of the Protection From Abuse Order relative to the parties. As such, it is the result of Father's actions which prevented him from attending this meeting. Further, Father was subsequently provided with the relevant educational information

Next, in his contempt petition, Father alleges that Mother failed to notify him of a serious illness of I▲ There was no evidence presented supporting this allegation. Father appears to claim that he was not informed about I▲s autism diagnosis, but evidence presented contradicts this claim. In actuality, it is clear that Father was well aware of this diagnosis, has been involved

5

in his son's treatment process, and was involved in securing a second medical opinion regarding this diagnosis and treatment plan.

Father further alleges that Mother fails to cooperate with encouraging contact and reasonable telephone access between Father and the children. This claim is not supported by the evidence presented. Mother does not maintain a traditional telephone at her residence; however, the children use a prepaid cellular telephone so they can communicate with their father. Mother admitted that there have been occasions where the telephone minutes had expired; however, efforts were promptly made to restore said communication.

Finally, Father alleges that Mother permits negative comments to be made about Father directly to the children or in the children's presence. There was no evidence presented to convince the Court that any said comments have been made.

Father is seeking primary physical custody of the children. Mother is seeking limitations on Father's periods of partial physical custody, including a period of supervised visitation. In consideration of the factors enumerated by 23 Pa.C.S. 5328(a) as they relate to the children's best interests in this case, based on the evidence presented by the parties, the Court finds as follows:

1. The Court finds that both parents are disturbingly deficient in encouraging and permitting frequent and continuing contact between the children the other parent. Said deficiencies, no doubt, result in the tumultuous prior relationship between the parties and their ongoing divorce litigation. The Court believes that both parents incorrectly view their time spent with the children as being their own, free from the interference of the other parent. This is simply inappropriate. Both parties must recognize the need to set aside their personal disputes and foster continuing contact between the children and the other parent.

6

2. The Court does not believe that there exists any current risk of harm to the children by either parent or any members of their households. The Court has reviewed records provided by the Lancaster County Children and Youth Social Service Agency. (Factor 2.1). Although there was prior involvement with this family, the Lancaster County Children and Youth Social Service Agency made no findings of abuse.

With respect to Mother, the Court finds no evidence suggesting that there exists any risk of harm to the children while in her custody. Father contends that, based upon the testimony of various neighbors, Mother fails to adequately supervise the children while in her care. Specifically, Father claims that the Mother allows the children to inappropriately play in the street near her residence. The Court does not find such testimony to be compelling. Simply put, it appears that said periods of play in the street involved an isolated incident some time ago. Further, the Court finds as credible Mother's testimony that she has corrected the children and that the children presently play in the backyard of her residence. Mother's testimony was corroborated by the witnesses presented by Father, who testified that this has not been a lingering concern.

With respect to Father, the Court does not believe that the children are currently at risk of harm while in his custody. The Court recognizes the testimony of C███████ C███████, the elder son of the father. In his testimony, C███████ attempted to portray his father as being quite abusive and unstable. There is no doubt that there is a strained relationship between C███████ and his father. The underlying bias resulting from the nature of this relationship must be recognized by this Court. The Court firmly believes the father did expose C███████ to an excessive amount of corporal punishment during his formative years. That being said, the Court does believe that C███████ exaggerated the extent of such treatment in an effort to

7

portray his father in a negative light. The Court, in recognition of the direct testimony of the Mother and of the child, I█ C███████, does not believe that there exists a present risk of harm to the children involved herein. By all accounts, Father enjoys a positive relationship with the children and makes every effort to involve the children in productive activities. Further, the Court's findings in this regard are bolstered by the review of the Children and Youth records, which demonstrated no concerns of abuse after reasonable investigation.

3. The Court finds that both parents adequately perform parental duties on behalf of the children. With respect to Mother, it is recognized that the mother has always taken an active role in care of the children and has always been the primary caretaker. It is very clear that Mother has been actively involved in that the medical and educational situations involving the child, I█ C███████. Additionally, it is quite apparent that the children are happy and comfortable in Mother's care. Similarly, the Court believes that Father adequately performs parental duties on behalf of the children. It is noted that prior to the parties' separation, Father did perform parental duties with respect to the children at times when the mother was working. Again, C███████ C███████ attempted to portray his father in a negative light by suggesting that the father did not adequately perform parental duties on behalf of the children while the mother was at work. The Court finds said testimony to be exaggerated in nature. It is quite clear that Father has been providing parental duties to the children both before and after separation. As noted above, the Court is impressed with Father's efforts to involve the children in productive activities.

4. The need for stability and continuity in the children's education, family life, and community life is of paramount concern to the Court in this case. The Court notes that the current custody order has substantially been in place since the separation of the parties.. The Court finds that no evidence was presented by either party to demonstrate that the current

8

schedule is inappropriate for the children or to suggest that the children would benefit from a modified custody schedule. Additionally, the Court notes that stability is important factor in the interest of I⬛C⬛⬛, given his medical diagnosis for autism. Based upon the entirety of the record, the Court believes that both parties by their actions are adequately providing for stability and continuity in the children's education, family life, and community life on the current custody schedule.

5. Testimony presented at the evidentiary hearing indicated that Mother has several extended family members residing in Lancaster County, with whom the children share a positive relationship. There was no testimony presented with respect to any extended family in Father's family residing in close proximity.

6. The children have one half-brother, C⬛⬛ C⬛⬛, the Father's older son. As previously indicated, it is very apparent that this older half sibling is estranged from Father. That being said, it is recognized that the children did enjoy a relationship with their half sibling at a time several years ago when C⬛⬛ resided with the parties and the children. Unfortunately, given the strain in the relationship between the half sibling and their father, it is unlikely that the children will continue a relationship with the half sibling. With respect to their own interaction, it appears that the children have a positive relationship with one another.

7. It is noted that both parties did not desire that the Court to speak to the younger child, R⬛C⬛. As such, the Court did not speak with the younger child. It is further noted that both parties waived their presence with the respect to the Court's discussion with the older child, I⬛C⬛ The Court did have the opportunity speaking with I⬛ in chambers. The child expressed a preference to spend more time with his father; however, the Court finds this

preference was based upon sentimentality and not the product of sound reason. The Court notes that there was no evidence suggesting that the father manipulated this child.

8. There was no evidence presented to demonstrate that either parent has attempted to turn the children against the other parent. As previously noted, there is no doubt that these parties have a very strained relationship and are currently engaged in a contentious divorce litigation. That being said, the parties do not appear to be actively attempting to alienate the children from the other parent.

9. Both parents have demonstrated a likeliness and ability to maintain a loving, stable, consistent, and nurturing relationship with the children. Father did raise allegations that Mother's home is in foreclosure; however, the Court does not believe that this will impact Mother's ability to provide a loving, stable, consistent, and nurturing environment given her strong relationship with the children.

10. The Court believes that both parents are equally able to attend to the daily physical, emotional, developmental, educational, and special needs of the children. Simply put, the testimony presented indicated that both parties have taken reasonable efforts in this regard. It appears that both parents are actively involved in the medical and educational difficulties of the child, I● This fact underscores the ability of both parents to continue to attend to these needs of the children.

11. The parties' residences are in close proximity to the one another.

12. The Court believes that both parties are able to make adequate childcare arrangements. Testimony presented indicates that Mother has extended family living in the area. Further, said testimony indicated Mother has made adequate childcare arrangements while being the primary custodian of these children. The Court notes that Father presented no testimony regarding his

ability to arrange for child care. That being said, the Court notes that the father is currently unemployed and seemingly would not need child care while the children are in his custody. Further, Father currently resides with his girlfriend, who would also be available for child care if needed. The Court does note that the children do have a positive relationship with Father's girlfriend. The Court notes Mother's claims that Father's girlfriend is an inappropriate resource for the children. This claim appears to be based upon the fact that she assisted with the father's manipulative efforts in attempting to remove ███████ ███████ from a residential treatment facility. While the Court does believe that Father and his girlfriend were involved in said attempts, the Court does not believe that this matter impacts her ability to care for the children.

13. As previously indicated, there is an extreme level of conflict between the parties in this matter. As noted, the parties had a tumultuous prior relationship, resulting in Mother having a current Protection From Abuse Order against Father. Additionally, as noted, the parties are currently engaged in lengthy and contentious divorce proceedings. The nature of these concerns appear to have impacted the ability of the parties to communicate. At present time, the parties are simply unable to communicate with one another on matters involving the children. As a condition of the Protection From Abuse Order, the parties communicate through the Maternal Grandmother. While this method of communication may be presently appropriate due to the Protection From Abuse Order, the Court notes that these parties must find an ability to communicate with one another. Mother needs to set aside her concerns, based on the prior relationship, in an effort to find a means to communicate appropriately with the father solely regarding the children. The Court is, frankly, more troubled with Father's actions in this regard. Not only is Father unable to directly communicate with Mother, Father's actions demonstrate an inappropriate attitude. It is the Court's concern that Father is attempting to use the custody order

11

as being punitive in nature. Specifically, it is obvious that Father attempts to discover instances where he can advance claims that Mother has violated the custody order as being evidence to sway the custody litigation in his favor. The Court believes the father should focus on advancing appropriate communications with Mother, rather than trying to examine the relationship as a basis to allege violations of the custody order. If Father continues with such behavior, there is simply no hope that these parties will ever effectively communicate, to the detriment of the children.

14. The Court does not believe that any evidence was presented to demonstrate any current drug or alcohol concerns with either party. The Court does note that both parents appear to have had a history of drug abuse. That being said, there is no evidence to suggest that such concerns continue with respect to the parents. Again, the Court recognizes the testimony of C███████ C████████ in this regard, which suggested that Father had a marijuana issue. Again, the Court finds such testimony to be exaggerated in an effort to portray the father in a negative light. That being said, even if Father did use marijuana, this testimony raised allegations from several years ago and there does not appear to be any continued concern in this regard.

15. The Court finds, based on the testimony presented, that neither party nor members of their households have any mental or physical conditions that would pose a risk of harm to the children.

16. There are no other relevant factors for the Court's consideration. Father repeatedly raised concerns regarding his belief that the children are exhibiting extreme transitional stress based upon the separation the parties. The Court notes that no professional evidence was presented in this regard. Additionally, in the Court's judgment, there was no evidence to suggest that these children are exhibiting behaviors any different than other children involved in

contentious custody litigation.

Although the Court recognizes that neither party may be content with this decision, the Court firmly believes that maintaining the current Court Order is in the best interest for these children. As noted above, stability of these children is of paramount concern to the Court. Simply put, there was no evidence presented by either party to suggest that the current custody schedule should to be modified. As such, the Court enters the following Order.

## O R D E R

AND NOW, this 18th day of July 2014, on Father's Petition for Modification dated October 2, 2013 and Father's Petition for Contempt dated December 13, 2013, and following a hearing on these matters, which was attended by Mother, with counsel, and Father, without counsel, the Court sets forth the following Order:

I.  Father's Petition for Contempt is DISMISSED.

II.  The Custody Order dated May 6, 2013, shall remain in full force and effect, subject to the following limited revisions:

 A. Neither party shall store fireworks or any other combustible explosives in a residence, or transport any such items in a vehicle, where the children are present. This provision excludes any gasoline cans or items needed for lawn maintenance.

 B. Neither party shall use excessive corporal punishment on the children.

## RELOCATION NOTICE

IF YOU ARE PROPOSING TO RELOCATE TO ANOTHER AREA WITH THE CHILDREN NAMED IN THIS CUSTODY ACTION, you must comply with the requirements of Section 5337 of the Pennsylvania custody law which includes sending notice of your proposed move to every other individual who has custody rights to the Children and providing specific information concerning your relocation. The law may be found at 23 Pa. C.S.A. §5337. If you do not comply with the notice provision or provide the required information, the Court has the ability to consider your failure as an element in the custody or relocation decision.

BY THE COURT:

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 7-25-14

ATTEST: _____

_____
MERRILL M. SPAHN, JR., JUDGE

COPIES TO:  Douglas Paul Lehman, Esquire, Attorney for Plaintiff
C▪▪▪C. C▪▪▪▪▪, *Pro Se,* ▪▪▪▪▪▪▪▪▪▪▪