dy in another jurisdiction, he had signed a form anticipatorily declining to be interviewed?

**G.A., Appellant**

**v.**

**D.L., Appellee.**

Superior Court of Pennsylvania.

Argued April 17, 2013.
Filed July 3, 2013.

Jeffrey P. Paul, Pottsville, for appellant.

Jeffrey M. Markosky, Mahanoy City, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

In this child custody case, G.A. ("Mother") appeals from an October 18, 2012 order of the Schuylkill County Court of Common Pleas ("the trial court"). That order found Mother in contempt of an August 7, 2012 interim order, and reinstated a previous custody order of March 8, 2011. The March 8, 2011 custody order had granted Mother primary physical custody of the parties' daughter, J.L. ("Child") age eight, but had granted D.L. ("Father") partial physical custody. We affirm the trial court's finding of contempt, but vacate the trial court order to the

* Retired Senior Judge assigned to the Superior Court.

extent that it restores the March 8, 2011 custody order.

In its October 18, 2012 findings of fact and order, the trial court succinctly stated the relevant factual and procedural history of this case: [1]

A hearing was held on October 15, 2012 on [Father's] Petition for Contempt filed August 20, 2012. The hearing was originally scheduled for September 11, 2012, and was continued by [Mother]. The hearing was attended by [Father] and counsel for both parties. [Mother] participated briefly by telephone but then could not be contacted after the connection was lost. Counsel for [Mother] acknowledged that he had received notice of the hearing which was mailed to his office on September 10, 2012. Pursuant to the Order of August 7, 2012, Mother was to make [Child, born in March of 2002], available for reconciliation counseling with Father. At the hearing on October 15, 2012, Father testified credibly that two appointments were made for Father and [Child] at Access in Orwigsburg for August 7, 2012, and August 9, 2012. Both appointments were attended by Father only who took the opportunity to have some individual counseling. Mother did not appear with [Child]. Mother and Father agreed to use United Charities, Inc. of West Hazleton, Pennsylvania and Father and [Child] attended a September 26, 2012 session which went well. Other sessions were scheduled for October 1, 2012, and October 10, 2012, which Mother did not attend with [Child]. Mother told Father that she was not taking [Child] to more counseling and that she was not going to any contempt proceedings if the same

1. All hearings referred to in this memorandum were held before a master. The trial court issued its orders on the master's recommendation.

were filed. Three more sessions are currently scheduled with United Charities for October 15, 2012[,] October 25, 2012 and October 30, 2012. Father requests the Court to have Mother held in contempt for failure to comply with the Order of August 7, 2012. A report from United Charities, Inc., was received in the Custody Conciliation Office dated October 11, 2012, indicating that the reunification session attended by [Child] and Father went well and that [Child] was asking to go to Father's home. Father has incurred $1,000.00 in reasonable attorney's fees.

NOW THEREFORE, based on the foregoing and upon recommendation of the Hearing Officer, it is hereby ORDERED as follows:

1. [Mother] is in CONTEMPT of the Order of Court dated August 7, 2012. Plaintiff may purge herself of this contempt by taking [Child] to the reunification sessions at United Charities, Inc. scheduled for October 25, 2012, at 3:00 p.m. and October 30, 2012, at 3:00 p.m., and by paying the sum of $1,000.00 in attorney's fees to counsel for [Father] within ninety days of the date hereof.

2. The previous Custody Order of March 8, 2011 shall be reinstated on November 2, 2012.

Order of Court, 10/18/12.

Prior to the entry of this order, the parties' custody of Child was governed by an agreement reached by Mother and Father at a hearing convened on March 19, 2012 to address a contempt petition that Mother had filed against Father.[2] The March 19, 2012 agreement provided:

1. [Mother's] petition for contempt will be withdrawn without prejudice.

2. [Father's] custodial rights will be suspended for a period of 120 days retroactive to February 20th, 2012.

3. During the suspension period [Father] will receive anger management counseling during the suspension period [sic].

4. [Father] will submit to a psychological evaluation.

5. [Father] will pay to [Mother's counsel] 50 percent of the requested attorney's fees or $750 which will be due and payable at the expiration of the suspension period.

6. [Father's] visits with [Child] will only resume if the anger management counselor and the psychological evaluator deem it appropriate.

Notes of Testimony ("N.T."), 3/19/12, at 2–3.

At a hearing held on August 2, 2012, the parties modified this agreement. On August 7, 2012, the modified agreement was entered as an order of court. Mother's attorney read it into the record:[3]

---

**2.** Mother has filed numerous petitions requesting that Father be held in contempt for violating various custody orders. The trial court granted Mother's first two petitions, finding that Father had been calling Mother inappropriate names in front of Child and that Father had been refusing to comply with the custody schedule. See T.C.O., 1/7/11; T.C.O., 7/27/11. Thereafter, on February 14, 2012, Mother filed a third petition for contempt. The petition requested that Father be held in contempt for violating the custody orders of December 16, 2009, June 14, 2010, June 25, 2010, and March 8, 2011. Within this petition, Mother detailed Father's history of violating the trial court's orders, and alleged that Father continued to call Mother derogatory remarks in front of Child and persisted in disobeying the custody order. See Contempt Petition, 2/14/12, at 2–6. The trial court scheduled the above-referenced March 19, 2012 hearing to address Mother's February 14, 2012 contempt petition.

**3.** The transcript of the August 2, 2012 hearing is attached to the trial court's order, which states, in part, "Counsel for each party requests that the attached stipulation be

THE MASTER: So in essence [Father] wants to make a proposal to dispose of these petitions, and you [Counsel for Mother] are saying that you have the authority to agree to that?

[COUNSEL FOR MOTHER]: Yes, based on my discussions with her when she made it clear that she would agree to supervised visits initially to wean him back into the relationship.

THE MASTER: Okay, and I understand [Father] is willing to do that through a counselor to break the ice with [Child]; is that correct?

[FATHER]: Yes.

THE MASTER: All right. Well, then if you want to indicate what your agreement is for the record.

[COUNSEL FOR FATHER]: Yes, sir. The agreement I understand it is that [Father] is going to schedule an appointment with Janice Price, the counselor that he has been, has seen in the past, regarding the custody issues regarding himself and [Child]. And the purpose of this is going to be for [Father] and [Child] to attend counseling sessions with Miss Price. The purpose of these is to determine whether or not in Miss Price's opinion [Father] can resume following the custody order dated March 8th, 2011, that provides for his periods of partial custody. The stipulation is that [Mother] will make available and transport [Child] to the counseling sessions. I will provide [Mother's attorney] with notice of when these counseling sessions will take place. I will, of course, be provided from my client the dates and times, and I will give as much notice as possible. And we will leave it in the hands of the counselor, Miss Price, as to when [Father] can resume following the March 8th, 2011, Stipula-

tion and Order. And we would also like to be able to do this through reports that I'm going to ask Miss Price to provide me for each session, progress reports so to speak that I will, of course, provide to [Counsel for Mother] as the sessions occur.

THE MASTER: Is that agreeable, [Counsel for Mother]?

[COUNSEL FOR MOTHER]: Yes.

N.T., 8/23/12, at 3–5. Father testified that he understood the agreement and that he accepted its terms. N.T., 8/23/12, at 5.

On August 20, 2012, Father filed a petition for contempt. He alleged that Mother had refused to transport Child to the counseling sessions specified in the August 7, 2012 order, and had actively refused to engage Child in the reunification process with Father. In closing his petition, Father prayed for the following relief:

> WHEREFORE, [Father] respectfully requests this Honorable Court to enter an Order finding [Mother] in contempt of the August 7, 2012 Order of Court, further Order the Respondent to pay [Father's] counsel fees in the amount of one thousand ($1,000.00) dollars, and further Order [Mother] **to resume following the August 7, 2012 Order of Court.**

Father's Petition for Contempt of Custody Order, 8/20/12, at 2 (unpaginated; emphasis added). The trial court originally scheduled the hearing on Father's petition for September 11, 2012, but continued it at Mother's request.

When the hearing convened on October 15, 2012, Father and counsel for both parties were present. Mother failed to appear. Father testified that he had attended the scheduled counseling sessions but that Mother did not bring Child to those sessions. N.T., 10/15/12, at 5–7. At that

adopted as an Order of this court." Interim

Order of Court, 8/7/12, at 2 (unpaginated).

point in the hearing, Mother called her counsel on counsel's cell phone. The call was interrupted shortly after it began, and Mother did not call back. Mother's counsel told the trial court that Mother said that she had not received notice of the hearing. N.T., 10/15/12, at 9.

Father's unrebutted testimony at the hearing established that he had done everything required of him by the August 7, 2012 order. As the hearing closed, Father's counsel asked the master to reinstate Father's custody under the terms of the original order of March 8, 2011, not under the terms of the August 7, 2012 order, as Father had requested in his petition for contempt. N.T. 10/15/12, at 11–12.

On October 18, 2012, the trial court granted Father's request and reinstated the March 8, 2011 custody order, found Mother in contempt, and granted Father attorney fees. On November 16, 2012, Mother filed her notice of appeal and statement of errors complained of on appeal. In lieu of an opinion pursuant to Pa.R.A.P. 1925(a), the trial court called our attention to its October 18, 2012 findings of fact and order.

Mother raises the following issues for our review:

1. Did the lower court err and abuse its discretion by adjudicating Mother in contempt of a court order, although she had never been served with the original petition for contempt, nor was she ever notified of the scheduling of the contempt hearing, as a result of which she was adjudicated in contempt "in absentia"?

2. Did the lower court err and abuse its discretion by imposing the sanction of modifying the existing custody orders as part of its sanction for contempt, where [Father] had never requested a modification of the existing orders, none of the orders scheduling a contempt hearing contained a notice that the existing custody orders would be modified or changed as part of the contempt action, and a hearing was not held on whether it was in the best interests of [Child] to vacate the existing custody orders and to reinstate a prior custody order?

Mother's Brief at 5.

■■■ Our scope and standard of review are well-settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. *Johns v. Cioci*, 865 A.2d 931, 936 (Pa.Super.2004). We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. *Id.* In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. *Id.* However, we are not bound by the trial court's deductions or inferences from its factual findings. *Id.* Ultimately, the test is "whether the trial court's conclusions are unreasonable as shown by the evidence of record." *Landis v. Landis*, 869 A.2d 1003, 1011 (Pa.Super.2005) (citations omitted). We may reject the conclusions of the trial court "only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa.Super.2005).

With any child custody case, the paramount concern is the best interests of the child. *Landis, supra*, 869 A.2d at 1011. This standard requires a case-by-case assessment of all the factors that may legitimately affect the "physical, in-

tellectual, moral and spiritual well-being" of the child. *Id.* (citations omitted). *Collins v. Collins,* 897 A.2d 466, 471 (Pa.Super.2006).

■ When we review a trial court's finding of contempt, "we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *P.H.D. v. R.R.D.,* 56 A.3d 702 (Pa.Super.2012) (citation omitted). This court also has stated that "each court is the exclusive judge of contempts against its process." *Royal Bank of Pennsylvania v. Selig,* 434 Pa.Super. 537, 644 A.2d 741, 747 (1994).

■ Mother first asserts that the trial court abused its discretion by finding her in contempt because she had "never been served with the original Petition for Contempt, and she was never notified of the scheduling of the contempt hearing[.]" Mother's Brief, at 18.

Mother relies on our decision in *Everett v. Parker,* 889 A.2d 578 (Pa.Super.2005). In *Everett,* we found the manner of service deficient where, instead of serving the mother directly, the father served a petition for contempt on an attorney who represented the mother in an unrelated matter. We held that "[s]ervice is not valid where it is made upon an attorney who represented the party to be served in unrelated matters, and who never enters an appearance in the relevant case." *Id.* at 581.

In this case, Mother denies that she was ever served with the petition. Mother claims that this violates Pa.R.C.P. 1915.12(d), which requires that "The petition shall be served upon the respondent by personal service or regular mail." However, where an individual is represented by an attorney, our rules of civil procedure permit service to be made "by handing or mailing a copy to or leaving a copy for each party at the address of the party's attorney of record endorsed on an appearance or prior pleading of the party." Pa. R.C.P. 440.

The case before us is unlike *Everett.* Here, Father's attorney served Mother's attorney with a copy of the petition for contempt. Mother's attorney admitted receiving it. In an affidavit submitted to the trial court as Exhibit "A" to Mother's petition for reconsideration, Mother's attorney states, "Although [Mother's attorney] received notice of the contempt hearing which had been scheduled for October 15, 2012, neither he nor his paralegal notified [Mother] of this hearing." Rule 440 requires only that process be served upon the attorney for a party. The attorney's failure to notify his client does not render service defective. Valid service was complete when Mother's attorney received a copy of the petition. Thus, the trial court did not abuse its discretion when it found Mother in contempt *in absentia.*

■ In Mother's second issue, she claims that the trial court erred when it impermissibly modified the parties' custody order by reinstating the custody order of March 8, 2011. We agree.

Mother relies on this court's decision in *Langendorfer v. Spearman,* 797 A.2d 303 (Pa.Super.2002). In *Langendorfer,* we held that a lower court may not modify a custody order as a sanction for contempt of such an order, unless a petition to modify custody has been filed and all parties have been provided with notice and opportunity to prepare and advocate their respective positions. In *Langendorfer,* the trial court ruled upon a mother's petition for contempt by finding the father in contempt and modifying the parties' custody order as a sanction. The mother had not requested custody modification, and the

father received no notice or opportunity to prepare a counter-argument.

More recently, in *P.H.D. v. R.R.D.*, 56 A.3d 702 (Pa.Super.2012), we expanded on *Langendorfer*. In *P.H.D.*, the trial court dismissed a mother's petition for contempt against a father but "clarified" the parties' custody order. In her petition in *P.H.D.*, the mother claimed that the father had intentionally appeared at activities where their children had been present, even though the custody order restricted the father to supervised visits. The trial court dismissed the contempt petition after the father testified that his presence had been coincidental. Yet the trial court proceeded nonetheless to modify the parties' custody order, stating that it was "modifying the [custody order] to clarify it. And what I'm saying in the order from now on is that [Father] is … not to appear at places where the children would be reasonably expected to be." 56 A.3d at 704 (brackets in original).

The father appealed, claiming that the trial court had abused its discretion and denied him his right to due process by modifying the custody order without first conducting a hearing on that modification. We afforded the father relief upon finding that his due process rights:

> were violated by actions taken by the trial court, because Father had no notice that custody would be at issue. Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment.

*Id.* at 707 (citation omitted).

We find the case before us analogous to *Langendorfer* and *P.H.D.* Here, the trial court modified custody by reinstating a previous order notwithstanding the fact that no petition for custody modification was before the court. In his petition for contempt, Father asked the trial court for two specific forms of relief: payment of his attorney fees, and Mother's compliance with the August 7, 2012 order. Mother was not on notice that custody was at issue, and she had no opportunity to prepare a case opposing a change in custody. The trial court abused its discretion when it modified custody by reinstating its custody order of March 8, 2011, notwithstanding the fact that neither party had presented a petition for custody modification. *Langendorfer, supra; P.H.D., supra.*

Accordingly, we affirm the order of the trial court to the extent that it finds Mother in contempt of its order of August 7, 2012 and requires Mother to pay Father's attorney fees. We vacate that part of the trial court's order that reinstates the order of March 8, 2011. If either party wishes to pursue custody modification, he or she must petition the court accordingly and provide proper notice.

Order affirmed in part and vacated in part. Jurisdiction relinquished.