J-A16045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| W.F.S., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| A.C.C., | : | |
| | : | |
| Appellant | : | No. 230 WDA 2016 |

Appeal from the Order January 19, 2016
in the Court of Common Pleas of Erie County
Civil Division at No(s): 11448-2014

BEFORE:   SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED AUGUST 25, 2016**

A.C.C. (Mother) appeals from the order of January 19, 2016, which failed to set forth terms to modify W.F.S's (Father's) periods of custody around K.C.S.'s Boy Scout activities and mandated K.C.S. and K.J.S. (collectively Children) enroll in a traditional "bricks and mortar" school. Upon review, we affirm the trial court's order in part and vacate in part.

This case began in May 2014 when Father filed a complaint for custody. Pursuant to an initial agreement entered by the parties on June 27, 2014, Mother and Father were to share legal and physical custody of Children. Specifically, Mother exercised primary residential custody with "Father exercising partial custody two overnights each week." Trial Court Opinion (TCO), 3/8/2016, at 1 (unnumbered).

_____

*Retired Senior Judge assigned to the Superior Court.

Since then, Father's court-ordered custodial times with Children have fluctuated, with Mother having sole legal and physical custody of Children for a period of time. Additionally, both parties have filed several petitions, including Mother's request for Father's visitation to be supervised and numerous contempt and modification petitions.

The aforementioned petitions culminated in a January 15, 2016 custody trial and a January 19, 2016 order issued by the trial court. The order provided "Father periods of partial custody and, in relevant part, further order[ed] that following the 2015-2016 school year, [C]hildren shall be enrolled in a traditional bricks and mortar school, rather than the Pennsylvania Cyber Charter School." *Id.* at 4.

Mother timely filed a notice of appeal. Mother raises the following issues for our review, which we have reordered for ease of disposition.

I.    Whether the [trial c]ourt abused its discretion in failing to provide terms for the attendance of [K.C.S.] to participate in his Boy Scout meetings and activities, where he has been enrolled in and participating in the Scouts, and [Father] presented no objection to the continued involvement in the Scouts or to [Mother's] request that [Father's] periods of partial custody be modified based upon the schedule of meetings and events.

II.   Whether the [t]rial [c]ourt acted beyond the scope of its authority and committed an error of law and/or abused its discretion in *sua sponte* raising a choice of school issue after the conclusion of the testimony and evidence and ordering that [C]hildren would no longer be permitted to attend their school (the Pennsylvania Cyber Charter School), and instead would be required to be enrolled in a "traditional bricks and mortar" school, where due process requires that the litigants receive notice of the issues before the court and an

opportunity to present their case in relation to those issues, and where neither party raised choice of school as an issue or objected to the choice of [C]hildren's school.

III. To the extent that the issue of choice of school is determined to have been properly before the [trial c]ourt, whether the [trial c]ourt committed an error of law and/or abused its discretion where there was no testimony or evidence presented to support a finding that [C]hildren's present school is not appropriate, nor was the choice of school contested by the [Father].

Mother's Brief at 8-9 (suggested answers omitted).

We set forth our well-settled standard of review when considering a child custody order.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.R. v. J.N.B.*, ___ A.3d ___, 2015 WL 8717198, at *5 (Pa. Super. 2015) (quoting *V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted)).

"When a trial court orders a form of custody, the best interest of the child is paramount. The factors to be considered by a court when awarding

- 3 -

custody are set forth at 23 Pa.C.S. § 5328(a)." **E.R.**, 2015 WL 8717198, at *5-6 (citations and quotations omitted).

First, Mother complains the trial court abused its discretion by failing to include provisions within the custody order that would require flexibility in scheduling periods of partial custody with Father around K.C.S.'s Boy Scout activities. Mother's Brief at 38-39. Regarding K.C.S.'s involvement in this "beneficial activity," Mother "proposed that Father be given notice of the days and times that [the activities] would conflict with his custodial periods and that he be given make up time." **Id.**

> In rejecting this proposal, the trial court stated it was
>
> unable to accommodate the request to arrange Father's custodial time around the activity. [K.C.S.'s] meetings and activities do not occur on a set day and time. As the [trial court] noted in its reasons on the record, there is extreme conflict between the parties and the ability of these parties to cooperate is extremely limited. In this regard, a specific order of custody was necessary. Mother's proposal of she [sic] and [F]ather working together to establish make-up time will not work for these parties.

TCO, 3/8/2016, at 8.

After a review of the record, we discern no abuse of discretion. Specifically, we find the trial court's decision not to accommodate Mother's request to schedule K.C.S.'s activity around Father's partial custody was based upon its familiarity of the parties and the contentious relationship that exists between them.[1] Based on the history of this case, the trial court's

---

[1] **See G.A. v. D.L.**, 72 A.3d 264, 268 (Pa. Super. 2013) (citations removed).

finding that Mother's proposal was impractical is reasonable.  No relief is due.

Mother's second and third issues involve the trial court's holding that Children should attend a traditional school instead of the Pennsylvania Cyber Charter School that K.C.S has been attending and K.J.S. will soon begin. Mother avers the trial court's decision violated her due process rights, because the law "requires the parties be given notice of the issues to be determined, in order to allow the parties the opportunity to prepare and advocate their respective positions."  Mother's Brief at 25.  Mother contends the "choice of school did not go to the custody decision itself, [Children's] schooling was not raised in any matter by Father as an issue, and Mother therefore had no notice that this was an issue to be determined in connection with Father's petition."  *Id.* Mother further argues that, even if the issue were properly before the trial court, the court abused its discretion when "determining that it was not in [Children's] best interest to remain at their current school."  *Id.*

The trial court responded to Mother's argument as follows.

---

In reviewing a custody order … [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

- 5 -

With regard to Mother's allegation that there was no testimony or evidence to support a finding that cyber school is not in the best interests of [] Children, this issue is [] without merit. First, there was fairly extensive testimony regarding [] Children's education. Of greater relevance, the Court had before it a custody dispute involving two very young children, ages 7 and 5, with parents completely unable to work together for their best interest. This case is not even two years old, yet there have been five contempt petitions, two modification petitions, and a motion for special relief. The one time that the parties reached an agreement, Mother, just four days later, requested a custody trial to void the agreement and to limit Father to supervised visitation. Ultimately, Mother obtained sole legal and physical custody when Father failed to appear for either the conciliation conference or the custody trial due to his incarceration. As a result, Mother ended up in a position of control, which she is clearly working hard to maintain. This adversarial history, combined with the information below, convinces the [trial c]ourt that leaving [] Children's education set up and controlled by Mother in her home will only serve to exclude Father completely from this most fundamental of aspects of [] Children's lives.

During Mother's period of sole control, she placed her domestic partner, [T.R.] in the position of a parent. [T.R.,] whom Mother refers to as a "stay-at-home mother," even quit her job to stay at home with [] Children and supervise their education through the PA Cyber Charter School. The decision to educate [] Children at home is a decision that Mother and [T.R.] made with no input from Father. [T.R.] has taken on such a large caregiver role in [] Children's lives that she testified "[Children] seem to think my last name is their last name." While it is commendable that [T.R.] has taken on an active role in [] Children's lives, the [trial c]ourt is concerned that [] Children are struggling with adjusting to the reintroduction of Father as a parent in their lives.

As the [trial c]ourt noted on the record, [C]hildren's behavior after visits with Father indicates that they are struggling with issues of loss, sadness[,] and confusion with regard to the parental roles that each of the parents plays in their lives. Mother has established a family unit for [] Children, of which Father is not a part. Albeit partially due to Father's own poor decisions, [] Children have been isolated from Father for

several months. Nevertheless, Father remains their parent, he has engaged in parenting classes and he indicates a desire and willingness to engage in parental duties. Considering the parties' inability to cooperate and the procedural history of this case, the [trial c]ourt is not convinced that Father can have any role in [] Children's education if it remains controlled by Mother and her domestic partner. After all, subsequent to Father's release from incarceration and his success in obtaining orders to regain contact with [] Children, Mother ended up in contempt for failure to provide [C]hildren for scheduled visits with their [F]ather. This was just weeks prior to the custody trial.

It is further noteworthy that attendance via the PA Cyber Charter School nearly precludes peer interaction. Meanwhile, such peer support has the potential to demonstrate to [C]hildren that their non-traditional family is not all that unique in today's society; they are not alone in their struggle to adjust to having divorced parents and a non-biological parental figure in their lives.

The Court considered Mother's reasons of not wanting [C]hildren to be in the city schools where the classrooms were not aesthetically pleasing and were full. Nevertheless, Mother's domestic partner, a former phlebotomist and paramedic, offers no higher degree of competency or benefit in overseeing [] Children's education. Accordingly, with the above considerations in mind, the [trial c]ourt did not find it in the [C]hildren's best interests to remain isolated in Mother's home to receive their cyber school education. Instead, it is in [C]hildren's best interests to attend school in the community, with their peers, in an environment within which their Father may play an active role.

TCO, 3/8/2016, at 6-8 (citations removed).

We disagree with the trial court's assessment of this issue. At the onset, we note that on orders of custody, our scope of review is broad. *Helsel v. Puricelli*, 927 A.2d 252, 254–55 (Pa. Super. 2007).

[This Court] is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing

- 7 -

court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Id.* citing *Liebner v. Simcox,* 834 A.2d 606, 609 (Pa. Super. 2003).

We find our decision in *Langendorfer v. Spearman,* 797 A.2d 303 (Pa. Super. 2002), instructive. While we are cognizant of the factual distinctions, our holding in *Langendorfer* is pertinent to the assessment of this issue. In *Langendorfer* we concluded that

[w]ithout notice to the parties that custody was at issue, the trial court could not "assume that the parties ha[d] either sufficiently exposed the relevant facts or properly argued their significance. Consequently neither we nor the trial court can make an informed, yet quintessentially crucial judgment as to whether it was in the best interests of the [child] involved to give sole legal [and physical] custody to the mother."

797 A.2d at 309 (quoting *Choplosky v. Choplosky,* 584 A.2d 340, 343 (Pa. Super. 1990)) (some brackets in original)).

In this case, a review of the record does not provide any indication that Children's school was an issue. To the contrary, the custody trial was set after a prior hearing was held and an order was filed granting Mother and Father shared legal and physical custody of Children, with Mother still maintaining primary custody. Mother, who avers she was not able to attend the hearing, requested the order be voided by the trial court. The court

- 8 -

agreed and voided the order, entering a new order which granted less custodial time to Father. A new custody trial was set, which resulted in the order at issue. Mother then filed a pre-trial statement, indicating that she wished to continue to have sole legal custody of Children. Notably, Father did not file a court-ordered pre-trial statement to indicate an issue with Children's education, nor did he object to Children's education during the hearing.

While we recognize that testimony was elicited from Mother and her domestic partner, T.R. regarding Children's school, such testimony did not go beyond K.C.S.'s progress and why he was enrolled in cyber school after a year in one of the city's public elementary schools. *See* N.T., 1/15/2015, at 16-20.

We cannot reconcile how a trial set to determine Father's partial custody of Children would make Mother aware that schooling was an issue. Had she known, she could have advocated to keep Children in the cyber charter school system by providing "*inter alia*, testimony and/or information from a school district representative as information regarding the [c]harter [s]chool, a comparison of [c]harter [s]chool versus public school which [C]hildren would otherwise attend, and evidence of an ability of the non-custodial parent to be involved in such schooling." Mother's Brief at 33-34.

Furthermore, we find that the trial court's conclusion that Children's best interest would be served by no longer attending cyber school lacking

the necessary competent evidence needed to support such a decision. Specifically, the trial court found that having Children's schooling set up in Mother's home "will only serve to exclude Father completely" from a "fundamental" aspect of Children's lives and would not allow him to have "any role" in Children's education. TCO, 3/8/2016, at 7-8. Because schooling was not raised by either party as an issue, no testimony was heard regarding how a non-custodial parent can become involved in a child's cyber schooling. Importantly, there was no testimony from Father that he ever requested and was rejected the opportunity to engage in Children's education or that he had shown interest in learning more about Children's schooling and was disallowed from receiving this information from Mother.

The court also concluded that Children's behavior after visits with Father "indicates that they are struggling with issues of loss, sadness[,] and confusion."[2] *Id.* at 7. However, we find a dearth of evidence to suggest that their behavior results from attending cyber school and being supervised by Mother's domestic partner T.R. Such behavior is more likely due in part to, as the trial court characterized it, Father's "poor decisions." *Id.*

Lastly, the record fails to support the trial court's finding that attendance to the cyber school system "nearly precludes peer interaction"

---

[2] It appears this conclusion was made by the trial court based on information provided by T.R., who testified that when Children return from visits with Father "they're more sheltered" and they "seem more frightened [and] they seem scared." N.T. , 1/15/2016, at 39. Notably, the trial court stated it had not "heard" from Children. *Id.* at 50.

and Children's best interests would not be served by remaining "isolated" in Mother's home. *Id.* From the limited testimony taken regarding this aspect of Children's life, Mother indicated that both Children are enrolled in activities outside the home and that the cyber school offers extracurricular activities. *See* N.T., 1/15/2016, at 18, 20-21. Neither party indicated, nor did the trial court inquire into, how cyber school may be affecting their peer interaction. We find the court's conclusion to be based more on an assumption that because K.C.S. is not attending a "bricks and mortar" school, he is isolated and unable to interact with children his age. Because we find no evidence in the record to support this, we cannot agree with the trial court's supposition.

For these reasons, we vacate the part of the trial court's order mandating Children attend a bricks and mortar school. We affirm the court's order in all other respects.

Order affirmed in part and vacated in part.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>8/25/2016</u>