J-S08019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.G.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.R.H. | : | |
| | : | |
| Appellant | : | No. 1460 MDA 2020 |

Appeal from the Order Entered October 14, 2020,
in the Court of Common Pleas of Dauphin County,
Civil Division at No(s): 2014-CV-11133-CU.

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED MAY 05, 2021**

Following a consolidated hearing on cross-petitions for contempt and cross-petitions for custody modification, K.R.H. (Father) appeals the trial court's decision to award primary physical custody of the parties' 7-year-old son K.H. (Child) to S.G.C. (Mother). Mother had previously exercised primary physical custody of the Child for most of the preceding five years. At the commencement of the instant litigation, however, the parties agreed to share custody on an interim basis pending a final hearing - about four months. Ultimately, the court denied all requests for contempt, restored Mother's primary physical custody, and ordered the parties to mediate prior to engaging in any future litigation. Father only appeals the custody award and mediation

---

[*] Former Justice specially assigned to the Superior Court.

requirement. After careful review, we affirm the restoration of Mother's primary custody, but we vacate the order's provision requiring mediation.

The record discloses the relevant factual and procedural history: The parties separated in late 2014 and settled their custody dispute by consent order in May 2015, whereby Mother received primary physical custody and Father partial physical custody. Specifically, the parties agreed Father would exercise physical custody every Wednesday and every weekend. The parties shared legal custody at all times throughout this case. Following the 2015 consent agreement, however, Father stopped exercising his custodial rights and only saw Child "here and there." **See** N.T., 9/29/20, at 10. However, Mother pushed for a more consistent schedule, and so the parties informally agreed Father would see Child on alternating weekends. **Id.** The informal arrangement began either late 2015 or 2016, when Child was three years old, and lasted until Spring 2020.

In April 2020, Mother and Child were exposed to COVID-19, so Mother withheld Child while they quarantined without first seeking Father's input. In May, Father withheld custody to make up his lost time. These actions precipitated cross-contempt petitions, and evidently cross-petitions to modify custody.[1] Following a pre-hearing conciliation, the parties agreed, on an

---

[1] At the hearing, the court began with Mother's case-in-chief as she was moving party seeking contempt and modification. Counsel for Father averred, "I think they both filed custody technically, but…" N.T. at 5. As the docket does not contain an explicit petition for modification filed on behalf of Father, Father's cross-petition was presumably treated as a petition for contempt and modification. The discrepancy is irrelevant to our disposition.

interim basis, to share physical custody (on a week-on-week-off schedule) until the court issued a final custody order.

The court held a consolidated contempt and modification hearing, via videoconference, on September 29, 2020. The court denied the cross-petitions for contempt; although the court was troubled by the unilateral decisions of the parties, the court opined Mother was right to quarantine, while Father was entitled to make-up time.[2] Neither party appealed the contempt decisions. The court also denied Father's request to finalize the interim shared custody arrangement. Instead, the court reverted custody back to the primary/partial arrangement, in Mother's favor. But in doing so, the court increased Father's partial custody. Specifically, the court awarded Father some form of custodial time every weekend: in Week A, Father's custody would last from Friday morning until Saturday evening; in Week B, Father's custody would last from Friday morning until Sunday evening. Finally, the court ordered the parties to mediate with a paid professional prior to litigating future disputes. Father timely filed this appeal.

He presents the following issues, which we reorder for ease of disposition:

> 1. Whether the trial court erred as a matter of law and abused its discretion when it restored primary physical custody to Mother instead of continuing the shared

---

[2] We note that make-up time is not an authorized sanction for contempt under 23 Pa.C.S.A. § 5323(g)(1)(i)-(v). **See also G.A. v. D.L.**, 72 A.3d 264, 269 (Pa. Super. 2013).

physical custody scheduled that was in the best interests of the child?

2. Whether the trial court erred as a matter of law and abused its discretion when it ordered that the parties must file a certificate of having participated in mediation prior to filing a petition for modification to request a new schedule?

3. Whether the trial court showed a definite biased against Father's interests?

4. Whether the trial court's custody order is not supported by competent evidence in the record?

5. Whether the trial court erred/abused its discretion by improperly weighing the custody factors in favor of Mother but contrary to the best interest of the Child?

Father's Brief at 4.

We begin by observing our well-settled scope and standard of review concerning custody matters:

> In reviewing a custody order, our scope is the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**S.T. v. R.W.**, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

In his first issue, Father argues the court erred when it reverted custody back to Mother's primary care, even though the parties had been sharing custody for several months. Father's Brief merely lists the court's findings and faults the trial court for not "clearly explain[ing] why it decided to remove [Child] from 50/50 equal custody and restore primary physical custody to Mother." **See generally** Father's Brief 8-11. But Father does not specify how the court erred, nor could the trial court decipher Father's contention. T.C.O., 12/7/20, at *3. Father cites no legal authority and only cites to the trial court's opinion, in contravention of our Rules of Appellate Procedure. **See** Pa.R.A.P. 2119(a) (relating to contents of appellate briefs). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **See, e.g., C.H.L. v. W.D.L.**, 214 A.3d 1272, 1278 (Pa. Super. 2019) (citation omitted). If Father suggests the court's findings do not support a primary/partial arrangement, Father has already preserved that contention in his fourth and fifth appellate issues, and we address his arguments below.

If, on the other hand, Father argues the court did not adequately delineate its reasons for the award, we disagree. When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant factors as provided by the Child Custody Act. **A.V. v. S.T.**, 87 A.3d 818, 822 (Pa. Super. 2014) (citation omitted); **see also** 23 Pa.C.S.A. § 5328(a)(1)-(16). Furthermore, Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in

open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Section 5323(d) requires the trial court to set forth its mandatory assessment of the custody factors prior to the deadline by which a litigant must file a notice of appeal. **A.V.**, 87 A.3d at 823 (citation omitted). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **Id.** (citation omitted). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

Here, the trial court satisfied its obligation to delineate its reasons when it issued contemporaneously with its custody award a memorandum itemizing its Section 5328(a) findings. **See** Memorandum, 10/14/20, at 1-9. Following Father's notice of appeal and concise statement of errors complained of on appeal, the court then issued its opinion pursuant to Pa.R.A.P. 1925(a). **See** Trial Court Opinion (T.C.O.), 12/7/20, at 1-6* (not paginated). As Father observes, many of the custody findings favored neither parent, and the court's level of detail was sometimes minimal. Still, the court's ultimate rationale was sufficiently clear; the court restored Mother's primary custody, because it was in Child's best interests to regain the stability and continuity he enjoyed in her care. **See** Memorandum at 9. Even if the court's findings were not clear, the appropriate remedy would be to remand for a supplemental opinion. **See** **C.M. v. M.M.**, 215 A.3d 588, 594 (Pa. Super. 2019). Contrary to Father's position, such an error is not necessarily a basis for reversing the trial court's

- 6 -

ultimate award. Nor can it be said, here, that the court's minimalistic findings impeded Father's ability to thoroughly appeal the court's decision. Notably, Father preserved his challenge to the court's substantive decision in his fourth and fifth appellate issues. Thus, we conclude Father's first issue is without merit.

In his second appellate issue, Father contends the court erred when it ordered the parties to mediate, with a trained mediator, "prior to engaging in [any future custody] litigation." **See** Father's Brief at 11-12; **see also** Order of Court, 10/14/20, at ¶36 (Paragraph 36). Because we must interpret our statutes and rules of procedure to resolve this issue, we note the applicable standard of review is *de novo*, and our scope of review is plenary. **C.H.L. v. W.D.L.**, 214 A.3d at 1280 (citation omitted).

Paragraph 36 of the custody order provides, *verbatim*:

> Any proposed changes to this order which cannot be agreed upon or any disputes about the interpretation or practical application of this order and any alleged breaches of this order shall, prior to engaging in litigation, first be attempted to be resolved through mediation with a trained mediator, the costs to be shared equally between the parents. Free mediation is available for self-represented litigants through the Neighborhood Dispute Settlement at (717) 233-8255. If a parent is represented by a *pro bono* lawyer, they are eligible to request free mediation through the Dauphin County Bar Association Civil Dispute Resolution Program at (717) 232-7536.

Order of Court, 10/14/20, at ¶36.

The trial court maintained its inclusion of Paragraph 36 was authorized by our Rules of Civil Procedure, which govern "voluntary mediation in custody

actions." **See** Pa.R.C.P. 1940.1 – 1940.9; **see also** T.C.O. at \*4-5. The court opined that the Rules allow for court-ordered mediation, "at least as far as an original orientation session; continuation of mediation is voluntary." **Id.** at \*5. The court concludes it "has not required the parties in this case or any other to attend or complete the mediation prior to the filing of a petition for modification." **Id.** In response to Father's argument, Mother does not take a position on mandatory mediation. Rather, she is satisfied with the trial court's explanation that it did not intend to order anything beyond the initial orientation session. However, Mother argues in the alternative, that we should strike the offending Paragraph 36 if we determine it is erroneous. **See** Mother's Brief at 3.

In order to promote the resolution of custody disputes, without the parties having to resort to adversarial litigation, the Domestic Relations Code authorizes the establishment of a mediation program for actions brought under the Child Custody Act. 23 Pa.C.S.A. § 3901(a). "When a program has been established […], the court may order the parties to attend **an orientation session** to explain the mediation process. § 3901(b) (emphasis added). The Pennsylvania Rules of Civil Procedure define "orientation session" as "the initial process of educating the parties on the mediation process so that they can make an informed choice about continued participation in mediation. This process may be mandated by the court and may be structured to include either group or individual sessions. An orientation session may also include an educational program for the parents and children on the process of

divorce and separation and the benefits of mediation in resolving custody disputes." Pa.R.C.P. 1940.2.

Thereafter, "should the parties **consent** to mediation, the court may order them to mediate such issues as it may specify." 23 Pa.C.S.A. § 3901(b) (emphasis added). **See also** Pa.R.C.P. 1940.3(c) ("Following the orientation session and **with the consent of the parties**, the court may refer the parties to mediation.") (emphasis added). The court may assess additional costs of mediation on either party. 23 Pa.C.S.A. § 3902(b).

Finally, "[t]he court shall adopt local rules for the administration of the mediation program…." § 3901(c)(1). In Dauphin County, each petition for modification or contempt must include a template order for an "educational seminar," *i.e.*, the orientation session. **See** D.C.C.R. 1915.3.1(b)(1); 1915.3.2(b)(1); 1915.15(c). Furthermore, "[i]n all Custody actions, the parties shall complete a four-hour educational seminar (Seminar for Families in Change and Conflict) if a party has not attended the Seminar in the prior twelve (12) months and in such other cases as the Court my order." D.C.C.R. 1930(a).

In its Rule 1925(a) opinion, **supra**, the trial court accurately summarized its limited authority to promote mediation. The trial court acknowledged it may only order the parties to attend the orientation session to learn about mediation. And we add that a court may nevertheless order the session "at any time upon…the court's own initiative," notwithstanding the

- 9 -

wisdom or futility of making the parties repeat the session.[3] Pa.R.C.P. 1940.3(a); **see also** D.C.C.R. 1930(a) ("[T]he parties shall complete [the] seminar…in such other cases as the Court may order."); **and see** D.C.C.R. 1930(c) ("In a Petition for Contempt or a Petition for Special Relief (Emergency Custody) or other similar Custody actions, the parties shall attend the Seminar as ordered by the Court."). But this is where a court's authority stops. As the learned trial court recognized in its Rule 1925(a) opinion, the court may order mediation after the orientation session, but only if the parties consent.

Yet, the actual text of Paragraph 36 extends far beyond what is allowable. **See** Order of Court at ¶36. We accept entirely the trial court's word that it did not intend for such ramifications, as well as its guarantee that it had never ordered any parties to mediate in the past. But Paragraph 36 did not merely direct the parties to attend the orientation program upon a future petition for modification or contempt (something which is already provided for in the Dauphin County Local Rules of Procedure). Rather, Paragraph 36 ordered the parties to employ a mediator (at their own expense if they did not forgo legal representation). And it ordered the parties to first attempt to resolve their disputes privately before seeking any relief from the court. As written, either party may willfully disobey the custody order and then force the expense of mediation upon the other party, before the aggrieved may seek legal recourse. As written, neither party may bring any custody motion,

---

[3] Of course, the court may not order the orientation session if either a party or the child has been subjected to domestic violence. Pa.R.C.P. 1940.3(b).

emergency or otherwise, without first seeking justice elsewhere, via mediation from a third-party. Until then, Paragraph 36 locks the courthouse doors. This was an error.[4]

Therefore, we vacate Paragraph 36 of the court's custody order. While we agree with Father that the text is erroneous, Mother is correct that the remedy is simply to strike the provision. No remand is warranted because, as the trial court observed, it only meant to order what was already provided for by the Rules of Procedure. The remedy is not to reverse the trial court's entire award.

In Father's third issue, we consider whether the court exhibited a "definite bias" against Father. We review challenges to a court's impartiality for an abuse of discretion. *See Lewis v. Lewis*, 234 A.3d 706, 722 (Pa. Super. 2020).

> The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as the

---

[4] Although Father is correct on this issue, we caution the parties not to foreclose mediation in the future. We underscore the purpose of alternative dispute resolution, which is invaluable in custody disputes. As the Explanatory Comment to these Rules provides: "Courts are ill-equipped to mandate particular visitation schedules and custodial arrangements, the wisdom of which depend on the situations of the parents and children rather than on legal rules." The potential for successful co-parenting is so often undercut by the adversarial nature of family court. No one knows their children better than the parents, which is why our Judiciary, Legislature, and Rules of Procedure encourage the litigants to resolve their custody disputes without court intervention. But when the parents cannot agree, Pennsylvanians have established, through legislation, a hyper-specific process for determining the best interests of the child, while simultaneously protecting the rights of the parents. Courts may not foreclose that process.

> actual presence of bias or prejudice. However, simply because a judge rules against a party does not establish bias on the part of the judge against that party. Along the same lines, a judge's remark during a hearing in exasperation at a party may be characterized as intemperate, but that remark alone does not establish bias or partiality.

*Id.* (internal citations omitted).

"Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa. Super. 2013) (quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000)).

Instantly, Father contends the court displayed bias against Father because "[n]othing in the record support[ed] the trial court's decision to remove the [C]hild from the 50/50 custody of his parents where he was thriving and doing well." ***See*** Father's Brief at 12. Father argues the court did not make factual findings against him, but weighed each factor equally upon the parents. ***Id.***

To the contrary, the court ***did*** make findings against Father and ***did not*** weigh the factors evenly, as we discuss in Father's next issues. But even if the court erred, such errors do not equate to bias. Quite obviously, Father's allegation stems from the court's decision to rule in Mother's favor, even though it could have weighed the same evidence in his favor. As noted in

*Lewis*, *supra*, such a reason simply does not establish bias. Father's third issue is meritless.

In Father's final two issues, we review the crux of the court's custody decision. The primary concern in any custody case is the best interests of the child. To determine a child's best interests, the Child Custody Act lists specific factors the court must consider. *See* 23 Pa.C.S.A. §5328(a)(1)-(16). As such, the Act intends for these disputes to be decided on a case-by-case basis.

Father's penultimate issue asks whether the court's decision is supported by competent evidence. *See* Father's Brief at 13. Again, Father provided no citation to either the record, nor relevant legal authority. *See* Pa.R.A.P. 2119(a), *supra*. Essentially, Father argues that because the court did not find his testimony to be incredible, such testimony – that shared custody is in Child's best interests – must be accepted as gospel truth. *See* Father's Brief at 13. This argument speaks not to the competency of evidence, however, but to the weight of the trial court placed on the evidence.

Still, as we mentioned above, the finer points of Father's first issue may be transposed here. *See id.* at 10-11. Because the court's decided the Child's need for *stability* was the reason Mother's primary custody should be restored, we review whether there was competent evidence to allow the court to make such a determination.

Section 5328(a) of the Child Custody Act provides, in relevant part:

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors…including the following:

[…]

(4) The need for ***stability and continuity*** in the child's education, family life and community life.

[…]

(9) Which party is more likely to maintain a loving, ***stable***, consistent and nurturing relationship with the child adequate for the child's emotional needs.

[…]

23 Pa.C.S.A. § 5328(a)(4), (9) (emphasis added).

Here, the trial court determined:

**Factor 4: The need for stability and continuity in the child's education, family life and community life.**

[Child] is doing well in his current school…. Father lives in a different school district, but was unsure which school district that is, how his school district compares to the child's current school district, and how that school district is responding to the COVID-19 pandemic.

When in Mother's physical custody, [Child] is enrolled in many activities throughout the community including judo, soccer, swimming, Spanish boot camp, and community fundraising events. It is unclear how Father facilities [Child's] participation in these activities. Father testified that he does not take [Child] to judo because they are not taking, in his view, proper COVID-19 precautions. Mother noted that Father did not facilitate [Child's] participation in the Spanish boot camp virtual classes. Father responded that he was not made aware of any virtual classes but did facilitate completion of the worksheets provided by Mother. It was also revealed that some of the exhibits showing Mother and Child at fundraising events were photographed by Father.

[…]

**Factor 9: Which party is more likely to maintain a loving, stable, consistent and nurturing relationship**

> **with the child adequate for the child's emotional needs.**
>
> By all accounts, [Child] is a respectful, responsible child who is doing well, although Mother testified that [Child] has been less focused recently. Mother testified that she intentionally encourages an open relationship with [Child] in which he can trust her and confide in her. Mother also testified that she has special time with [Child] in addition to routine family duties and processes. Father testified that he is consistently with [Child], taking him along when working on Father's design business and nurturing the relationship through that consistent presence.

Memorandum at 5; 6-7.

Notwithstanding the court's emphasis on the contributions of both parents, the court did make a clear finding that it was in Child's "best interest for Mother to regain primary physical custody to provide him with stability…."

*Id.* at 9. Father argues this finding was not support by the record:

> The trial court did not find one parent was more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate to his emotional needs. Instead, the trial court pointed out positive points about each parent concerning this factor but failed to note that Father testified that the child is focused when he has custody.

Father's Brief at 10.

When reviewing whether the court's findings are supported by the record, we must be careful not to make independent factual determinations. *See S.T.*, 192 A.3d at 1160. "However, we are not bound by the trial court's deductions or inferences from its factual findings." *Id.* Ultimately, the test is

whether the trial court's conclusions are unreasonable as shown by the evidence of record. *Id.*

Here, the parties consented to a primary/partial arrangement after they separated in 2014. Soon thereafter, Father only sporadically exercised his rights, in large part due to the instability in his own life. *See* N.T., at 9-10. According to Mother, Father lived with a girlfriend with whom he fought in front of Child.[5] People smoked in Father's home; Mother had to bring Child food and clothing when Child was in Father's custody; and Father would not take Child to his daycare program, which jeopardized his enrollment when Mother had primary custody. *Id.* And only when Mother pressed for more consistency did Father agree to see Child on a regular schedule – every other weekend, less than half of what he originally consented to. *Id.* Child was three years old at the time.

Since then, Mother has been the driving force in Child's life. Mother was the parent responsible for all medical appointments; Father had not gone to any since the parties separated. Mother instituted a reward system to promote Child's development; *i.e.* Child receives points for doing chores, performing personal hygiene without Mother asking, and the like until Child accumulates enough points to merit a reward. *Id.* at 27. Mother also ensured

---

[5] Presumably, Mother meant Father had verbal arguments, not physical altercations.

Child met his educational needs, whereas Father has never attended a parent-teacher conference. *Id.* at 12. The parties operated this way for years until they tried, on an interim basis, a shared custody arrangement pending a final hearing.[6]

But even during the interim arrangement, Mother remained the household manager, ensuring Child's stability and continuity. For instance, Father did not facilitate one of Child's extra-curricular activities during the COVID-19 pandemic, because he was not made aware the activity had virtual sessions. *See* Memorandum at 5. Such an excuse echoes Father's explanation that he had not attended parent-teacher conferences, because Mother did not make him aware of them. N.T. at 75. Likewise, Father would ensure Child did his assignments, if Mother provided the worksheets to Father. Implicit in these acknowledgements is that Mother is the parent responsible for attending to the Child, and that Father may also attend to Child, if Mother provides the direction.

Critically, this inconsistency between the parents' standards of care has had an adverse effect on Child. Mother testified that, during Father's custodial time, Child turned in his assignments late at night. *Id.* at 44. Mother also

---

[6] Mother suspected the impetus for the litigation was not her COVID-19 quarantine, but the fact she recently obtained a formal child support order against Father, the inference being that Father sought to reduce his obligation by obtaining more custody. *See id.* at 32.

stated Child began having trouble sleeping and waking up on time. *Id.*

Moreover, Mother testified:

> [Child had] been a lot more agitated lately. He has not been focused. He actually has been talking back to me, and [Child] doesn't do that. He's very respectful. He doesn't, you know – I don't think that he's adjusting how I would want for him to.

*Id.* at 21.

We may infer that Child's maladjustment could be attributed to Child's unstable living situation while in Father's custody. At the beginning of the interim arrangement, Father was living with Paternal Grandmother, but Mother understood that Paternal Grandmother kicked Father out of her home, and that Father has been staying at a hotel since. *Id.* at 22. Mother also suspected that Child slept in Father's bed or on the couch, because he did not have a bed of his own while in Father's care. *Id.* at 41. Father disputed this, testifying that he lives with his fiancé and her two-year-old daughter. Father conceded that he rents a room at a hotel, but only so he can unburden the fiancé and her daughter with his graphic design business, which involves odorous chemicals. *Id.* at 77.

Even if the court accepted Father's explanation for the hotel room, the court was clearly not assuaged by the Father's inconsistent schedule. Father testified some nights he slept at the hotel with Child and had Child do his schoolwork there. *Id.* at 80. Other nights, Child slept at the apartment Father shared with his fiancé; Father testified Child has his own room at the

apartment, because the two-year-old slept either in the master bedroom with Father and the fiancé or in her playpen in the main area. *Id.* at 77; 102; 69. Perhaps as a consequence, Child was not always keen on going into Father's care. Mother testified that Child had "ups and downs," and sometimes asked if he could go to his cousin's house instead of going with Father. *Id.* at 34-35.

In response to Mother's testimony on the stability factors, Father stated he is "maintaining things" for Child and that he is "doing what I need to do be doing, taking care of [Child.] That's all that matters." *Id.* at 80. In terms of performing the routine parental duties, Father testified he cooks food for Child, "[b]ut other than that, [Child, who was nearly 8 years old] knows how to do a lot of things on his own." *Id.* at 80. Father did testify about the beneficial ways he spends time with Child, which included playing sports and LEGOs. *Id.* at 74. But in highlighting those attributes on appeal, Father conflates the competency of the evidence with the weight of evidence.

In our review, the record reveals there was competent evidence to support the court's decision. Child lacked a certain degree of stability and consistency during the interim, shared arrangement; Child was negatively affected by the same; and it was in his best interest to revert back to the primary/partial arrangement that Child had known virtually all of his life. We also should not ignore that the court accepted Father's argument that a more equitable division of custodial time was in Child's best interest. The court awarded Father more time than what he had been utilizing for the previous four years, evidently in the hope that this increased time would foster the

relationship between Father and Child, without incurring the negative consequences of a truly shared custody arrangement. The court added that its increase of Father's partial custody was meant to maintain Father's relationship with Child, and that the court "will look to provide Father with significant custodial time to enhance [Child's] ability to have an emotional connection with Father." **See** Memorandum at 9.

As Father reiterates throughout his Brief, the rest of the court's findings favored neither parent over the other. Thus, it was not unreasonable that the trial court's conclusions turned on the stability issue. **See S.T.**, **supra** ("[T]he test is whether the trial court's conclusions are unreasonable as shown by the evidence of record."). Therefore, we conclude Father's fourth appellate issue is without merit.[7]

---

[7] Although we focused on court's stability findings, we note the court's application of two other custody factors. The court declined to interview Child or otherwise seek to obtain his preference, nor did the court consider Child's potential sibling relationship. In his Brief, Father states in passing: "It was unclear from the trial court opinion why the court opined that [Child] lacked the maturity to form a well-reasoned preference [pursuant to Section 5328(a)(7)]"; and that "[t]he trial court erroneously found that [Child] has no sibling relationship while acknowledging that Father has a two-year old [daughter] with his fiancé [pursuant to Section 5328(a)(6)]." Father's Brief at 10. We conclude neither of these mistakes warrant a reversal of the court's decision, in this case.

First, Father did not request that the court interview Child, nor did Father object to the court's procedure during the hearing; and Father may not raise the issue for the first time on appeal. **See** Pa.R.A.P. 302.

Second, although Father is not the biological parent of this daughter, the daughter stood to be a "step-sibling" imminently. For purposes of Section

Finally, we address Father's fifth appellate issue, which asks whether the court's weighing of the custody factors was erroneous. ***See*** Father's Brief at 13. Once more, Father provides no citation to the record, nor legal authority to support his argument. He merely argues the court found both parents to be equally capable and concludes that Mother's restoration of primary custody was erroneous. ***Id.***

In reviewing a weight claim, we observe the great deference we bestow to the trial court on matters of custody:

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (citation omitted).

We can appreciate the Father's frustration with the court's minimalistic findings, even if a remand under Section 5323(d) is unwarranted. Father is

_____

5328(a)(6), "sibling" is intended to include "full-blood siblings, half-blood siblings, step-siblings and adoptive siblings." ***See*** 23 Pa.C.S.A. § 5328, Comment – 2010. In any event, Father provided virtually no testimony about Child's relationship with the fiancé's daughter.

Third, and most importantly, Father ultimately concedes "the trial court did address all relevant factors[.]" ***See*** Father's Brief at 11. Father did not directly appeal these errors, and he makes no argument that the court's best interest analysis was erroneous based on its omissions under Section 5328(a)(6)-(7).

- 21 -

correct that the court's findings mostly recounted the ways in which both parents were similarly situated. Although the court could have provided more, its rationale was sufficiently clear: "The [c]ourt concludes that it is in [Child's] best interest for Mother to regain primary physical custody **to provide him with stability** while still maintaining a close relationship with Father." **See** Memorandum at 9 (emphasis added). The court clearly weighed heavily in Mother's favor those factors concerning stability. **See** 23 Pa.C.S.A.§ 5328(a)(4); (9), **supra**.

Had the history of this case not been one of Mother's primary care, perhaps we might have shared Father's skepticism that such an incongruent amount of custody time may be awarded based on a single reason, especially when the stability factors do not directly affect the safety of **this** Child. **See** 23 Pa.C.S.A.§ 5328(a)("[T]he court shall…giv[e] weighted consideration to those factors which affect the safety of the child[.]"). But even then, we would have to be mindful of our role. We defer weight issues to the trial court, and our interference is unwarranted so long as the court's consideration was "careful and thorough." **See A.V.**, 87 A.3d at 820. And we reiterate that "parties cannot dictate the amount of weight the trial court places on evidence." **Id.** Here, the court thoroughly addressed all the relevant factors and reached a thoughtful conclusion. Father does not allege otherwise, so much as he contends such findings also support the shared custody arrangement he desires. He is not wrong. Had the trial court made the same findings, but reweighed the factors in Father's favor, our deference to the trial

court would almost certainly have precluded our interference just the same. Father's final issue is without merit.

In sum, we affirm the trial court's ultimate physical custody award. The trial court adequately delineated its reasons for its decision; the court did not evince any sort of bias or even the appearance thereof; there was competent evidence of Child's need for stability; and the court's weighing of those stability factors in its best interest analysis was neither an error nor an abuse of discretion. However, Paragraph 36 of the court's custody order, which demanded the parties mediate prior to future litigation, exceeded the court's authority. Because the trial court indicated in its Rule 1925(a) opinion that it only meant to direct the parties to the orientation session, and because such mandatory attendance is already provided for by the local rules, we may strike Paragraph 36 from the rest of the custody order without remanding the matter back to the trial court.

Paragraph 36 of the court's order, dated 10/14/20, vacated.  In all other respects, the order is affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2021